TRISH M. HIGGINS (State Bar No. 119215)
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497
Telephone:  916-447-9200
Facsimile:  916-329-4900

AMY ROSS (State Bar No. 215692)
ERIN M. CONNELL (State Bar No. 223355)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone:  415-773-5700
Facsimile:  415-773-5759

Attorneys for Defendant
Morgan Stanley & Co. Incorporated

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. KWAK,<br><br>    Plaintiff,<br><br>v.<br><br>MORGAN STANLEY & CO. INCORPORATED; and DOES 1-20, inclusive,<br><br>    Defendants. | Civil No. 08-0689-BEN (LSP)<br><br>**INDEX OF ATTACHMENTS TO DEFENDANT'S NOTICE OF MOTION AND MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION OF RELATED SEC ACTION**<br><br>Date:    September 8, 2008<br>Time:    10:30 a.m.<br>Dept:    Courtroom 3<br>Judge:   The Hon. Roger T. Benitez |

Memorandum of Points and Authorities in Support of Defendant's Motion
to Stay the Present Action Pending Resolution of Related SEC Action ......................... MPA 1-16

Declaration of Trish M. Higgins in Support of Defendant's Motion to Stay
the Present Action Pending Resolution of Related SEC Action .......................................... DEC 1-3

Exhibit A to Declaration of Trish M. Higgins in Support of Defendant's
Motion to Stay the Present Action Pending Resolution of Related SEC Action .......... EXH-A 1-62

Exhibit B to Declaration of Trish M. Higgins in Support of Defendant's
Motion to Stay the Present Action Pending Resolution of Related SEC Action ............ EXH-B 1-8

Declaration of Service by Hand .................................................................................................. POS 1-2

OHS West:260490032.1

INDEX OF ATTACHMENTS
(CASE NO. 08-0689-BEN (LSP))

1  TRISH M. HIGGINS (State Bar No. 119215)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
2  400 Capitol Mall, Suite 3000
   Sacramento, California 95814-4497
3  Telephone:  916-447-9200
   Facsimile:  916-329-4900
4
   AMY ROSS (State Bar No. 215692)
5  ERIN M. CONNELL (State Bar No. 223355)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
6  The Orrick Building
   405 Howard Street
7  San Francisco, California 94105-2669
   Telephone:  415-773-5700
8  Facsimile:  415-773-5759

9  Attorneys for Defendant
   Morgan Stanley & Co. Incorporated

10

UNITED STATES DISTRICT COURT

11

SOUTHERN DISTRICT OF CALIFORNIA

12

13

14  RICHARD A. KWAK,                         Civil No. 08-0689-BEN (LSP)

15           Plaintiff,                      **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION OF RELATED SEC ACTION**

16       v.

17  MORGAN STANLEY & CO.
    INCORPORATED; and DOES 1-20,
    inclusive,

18
             Defendants.                    Date:   September 8, 2008
                                            Time:   10:30 a.m.
19                                          Dept:   Courtroom 3
                                            Judge:  The Hon. Roger Benitez

20

21

22

23

24

25

26

27

28

MPA
1

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY................... 2
    A. Relevant Procedural History .................................................................................. 2
    B. Kwak Seeks Indemnification For Legal Expenses Incurred In An Underlying SEC Action ......................................................................................... 2
    C. The Underlying, Ongoing SEC Action Alleges Kwak Attempted To Manipulate Stock Prices For His Personal Benefit................................................ 3
    D. The Jury Found A Fraudulent Scheme Between Two Co-Defendants, Although Most Claims Against Kwak Will Be Retried In September 2008 .......... 4
    E. Kwak Declines To Stipulate To Staying The Present Action................................. 5
III. A STAY OF THE PRESENT ACTION PROMOTES JUDICIAL ECONOMY AND EFFICIENCY, PREVENTS UNNECESSARY LITIGATION COSTS AND MINIMIZES THE RISK OF CONFLICTING RULINGS................................................ 5
    A. The Court Has Broad Discretion To Stay The Present Action .............................. 5
    B. A Stay Will Preserve Judicial Resources And Promote Efficiency Because The Outcome In The SEC Action Will Affect And May Determine Critical Issues In The Present Action................................................................................. 6
        1. The Outcome Of The SEC Action Will Affect And May Determine Whether Morgan Stanley Must Indemnify Kwak Under Section 2802................................................................................................................ 6
        2. The Outcome Of The SEC Action Will Affect And May Determine Whether Morgan Stanley Is Entitled To A Set-Off From Kwak ................. 8
    C. A Stay Will Prevent Undue Hardship And Wasted Resources By Avoiding Unnecessary Litigation And Discovery Costs ....................................................... 9
        1. A Stay Could Obviate The Need For Cumbersome And Expensive Discovery Of Key Issues.............................................................................. 9
        2. The Jury's Findings In the SEC Action Could Make This Case Amenable To A Swift Dispositive Motion Without The Need For Extensive Discovery Or Litigation............................................................ 11
    D. Proceeding With The Present Action Could Lead To Conflicting Rulings.......... 11
IV. THE WASTE OF JUDICIAL RESOURCES, COST OF DUPLICATIVE DISCOVERY, AND RISK OF CONFLICTING RULINGS OUTWEIGHS ANY POTENTIAL PREJUDICE TO KWAK .......................................................................... 12
V. CONCLUSION ............................................................................................................... 12

OHS West:260482915.3      - i -      MEMO OF P&A'S IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION OF RELATED SEC ACTION

MPA 2

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Bechtel Corp. v. Local 215, Laborer's Int'l Union of North America,*
544 F.2d 1207 (3d Cir. 1976) ......................................................................... 6, 9

*CMAX, Inc. v. Hall,*
300 F.2d 265 (9th Cir. 1962) .............................................................................. 6

*Good v. Prudential Ins. Co. of America,*
5 F. Supp. 2d 804 (N.D. Cal. 1998) ................................................................... 5

*Kerotest Mfg. Co. v. C-O Two Fire Equipment Co.,*
342 U.S. 180 (1952) ............................................................................................ 6

*Landis v. North American Co.,*
299 U.S. 248 (1934) ............................................................................................ 5

*Leyva v. Certified Grocers of Calif., Ltd.,*
593 F.2d 857 (9th Cir. 1979) ......................................................................... 9, 10

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.,*
708 F.2d 1458 (9th Cir. 1983) ......................................................................... 5, 9

*O'Hara v. Teamsters Union Local # 856,*
151 F.3d 1152 (9th Cir. 1998) ............................................................................. 7

*Rivers v. The Walt Disney Company,*
980 F. Supp. 1358 (C.D. Cal. 1997) ................................................... 6, 10, 11, 12

*San Remo Hotel, L.P. v. City & County of San Francisco,*
545 U.S. 323 (2005) ............................................................................................ 7

**STATE CASES**

*Alma W. v. Oakland Unified School Dist.,*
123 Cal. App. 3d 133 (1981) .............................................................................. 7

*Cassady v. Morgan, Lewis & Bockius LLP,*
145 Cal. App. 4th 220 (2006) ............................................................................. 7

*Devereaux v. Latham & Watkins,*
32 Cal. App. 4th 1571 (1995) ............................................................................. 8

*Farmers Ins. Group v. County of Santa Clara,*
11 Cal. 4th 992 (1995) ........................................................................................ 7

*Grissom v. Vons Cos., Inc.,*
1 Cal. App. 4th 52 (1991) ................................................................................... 8

MPA
3

# TABLE OF AUTHORITIES
## (continued)

Page

*Jacobus v. Krambo Corp.*,
　78 Cal. App. 4th 1096 (2000)..................................................................................8

*Los Angeles Policy Protective League v. City of Los Angeles*,
　27 Cal. App. 4th 168 (1994)....................................................................................8

*Rodgers v. Kemper Constr. Co.*,
　50 Cal. App. 3d 608 (1975).....................................................................................7

### DOCKETED CASES

*Nielsen v. Merck & Co.*,
　Case No. C07-00076 MJJ, 2007 U.S. Dist. LEXIS 21250
　(N.D. Cal. Mar. 15, 2007)................................................................................6, 12

*Sun Pac. Mktg. Coop., Inc. v. Dimare Fresh, Inc.*,
　Case No. CIV-F-06-1404 AWI, 2007 U.S. Dist. LEXIS 32437
　(E.D. Cal. April 19, 2007).....................................................................................12

### STATE STATUTES

Cal. Lab. Code § 2802.................................................................................................3, 10

Cal. Lab. Code § 2865.....................................................................................3, 8, 10, 11

OHS West:260482915.3　　　- iii -　　　MEMO OF P&A'S IN SUPPORT OF DEFENDANT'S
MOTION TO STAY THE PRESENT ACTION PENDING
RESOLUTION OF RELATED SEC ACTION

MPA 4

## I. INTRODUCTION

Plaintiff Richard Kwak ("Kwak"), a former Financial Advisor with defendant Morgan Stanley & Co., Inc. ("Morgan Stanley"), seeks indemnification from Morgan Stanley for legal expenses allegedly incurred as part of a separate, ongoing action brought against Kwak by the Securities Exchange Commission ("SEC"). Staying the present action until resolution of the SEC action serves three beneficial and primary purposes. First, because the outcome of the SEC action will substantially affect, and may dispose of, several critical issues in the present action, staying the present action promotes the interests of judicial economy and efficiency. Indeed, Morgan Stanley contends that it has no duty to indemnify Kwak because the conduct at issue in the SEC action was outside and course and scope of Kwak's employment with Morgan Stanley, because the SEC action is not unfounded, and because Kwak acted with culpable negligence. The underlying SEC action alleges that Kwak and his co-defendants engaged in fraudulent conduct by attempting to manipulate stock prices for their own personal benefit. Accordingly, a determination in the SEC action as to whether or not Kwak engaged in the fraudulent conduct charged undoubtedly will bear upon – and may conclusively determine – whether or not that same conduct was within the course and scope of his employment, whether the SEC action is unfounded, and whether Kwak acted with culpable negligence.

Second, because both actions are based upon the exact same underlying transactions and occurrences (*i.e.*, Kwak's trading practices giving rise to the fraud-on-the-market allegations), many of the same key issues exist in both cases, even if they constitute different elements of different legal claims. Accordingly, staying the present action until resolution of the SEC action may obviate the need for expensive, complicated and time-consuming discovery and expert witnesses, may make the present action amenable to a swift dispositive motion without the need for extensive litigation, or may lead the parties to resolve the present action based on the evidence and/or outcome in the SEC action.

Finally, because the SEC action is currently scheduled to commence trial on September 29, 2008 – just three weeks after hearing on the present motion to stay – any potential prejudice to Kwak by slightly delaying adjudication of his indemnification claims will be minimal, and is

OHS West:260482915.3 — - 1 - — MEMO OF P&A'S IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION O'

MPA 5

far outweighed by the numerous other interests served by staying the present action. Accordingly, Morgan Stanley respectfully requests that the Court grant its motion in its entirety, and stay the present litigation until resolution of the underlying SEC action.

## II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A. Relevant Procedural History

On March 13, 2008, Kwak commenced the present action in the Superior Court of California for the County of San Diego. *See* Complaint. On April 15, 2008, Morgan Stanley timely served and filed its Answer to Kwak's Unverified Complaint. *See* Answer. Also on April 15, 2008, Morgan Stanley removed the present action to this Court on diversity grounds. *See* Notice of Removal.

### B. Kwak Seeks Indemnification For Legal Expenses Incurred In An Underlying SEC Action

Kwak's Complaint pleads three causes of action for (1) Violation of Labor Code Section 2802, (2) Negligence Per Se, and (3) Declaratory Relief. *See* Complaint. All three of Kwak's legal claims are based on his allegation that Morgan Stanley has refused to indemnify him for legal expenses incurred in defending against an SEC action brought against Kwak and seven other defendants: *Securities and Exchange Commission v. Competitive Technologies Inc. et al*, U.S.D.C. Case No. 3:04-cv-1331-JCH ("SEC action"). *See* Higgins Decl., Ex. A (SEC Complaint).

More specifically, Kwak alleges that under Labor Code 2802, Morgan Stanley had, and continues to have, an obligation to indemnify him because "the necessary expenditures and losses incurred by Mr. Kwak in the defense of the SEC action were incurred as a direct consequence of the discharge of Mr. Kwak's duties while he was employed with Morgan Stanley and/or were broadly incidental to Morgan Stanley's employment." (Complaint, ¶ 44). Kwak further alleges that "Morgan Stanley's past and continuing refusal to honor its mandatory statutory duty to indemnify Mr. Kwak for all necessary expenditures and losses incurred in the defense of Mr. Kwak's interests through November 29, 2007 constitute unlawful conduct which entitles Mr. Kwak to a presumption of negligence against Morgan Stanley." (Complaint, ¶ 56). Additionally,

OHS West:260482915.3 — - 2 - — MEMO OF P&A'S IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION O'

MPA
6

Kwak seeks declaratory relief in the form of a declaration stating that Morgan Stanley is required to pay Kwak for "all necessary expenditures and losses incurred by Mr. Kwak in the defense of the SEC action as required by Labor Code section 2802 including, without limitation, all attorney's fees and costs incurred by Mr. Kwak in securing indemnification from Morgan Stanley." (Complaint, ¶ 62).

In its Answer, Morgan Stanley pleads as one of its affirmative defenses that "[t]o the extent Kwak is found to be entitled to indemnification, and Morgan Stanley denies that he is, Morgan Stanley is entitled to a set-off under Labor Code Section 2865 for necessary and reasonable costs and fees Morgan Stanley incurred as a direct consequence of Kwak's actions." (Answer, ¶ 17).[1]

### C. The Underlying, Ongoing SEC Action Alleges Kwak Attempted To Manipulate Stock Prices For His Personal Benefit

The SEC action alleges that Kwak and his co-defendants engaged in the following misconduct with respect to a company called Competitive Technologies, Inc. (CTT):

> From at least July 1998 and June 2001, the defendants artificially raised and maintained the price of CTT's stock and created a false or misleading appearance with respect to the market for CTT stock through manipulative practices such as placing buy orders at or near the close of the market in order to inflate the reported closing price (a practice known as 'marking the close'), placing successive buy orders in small amounts at increasing prices (a practice known as 'painting the tape'), and using accounts they controlled or serviced to place pre-arranged buy and sell orders in virtually identical amounts (a practice known as 'matched trades') and to place other buy orders intended to minimize the negative impact on CTT's price from sales of the stock. . . <u>The defendants carried out their scheme in an attempt to enrich themselves and avoid losses</u>, including margin calls, by artificially inflating and maintain the price of CTT stock.

Higgins Decl., Ex. A (SEC Complaint, ¶ 1) (emphasis added).

More specifically, the SEC alleges that Kwak engaged in the following securities violations, each of which is a fraud-based claim:

- **Violation of Section 9(a) of the Exchange Act of 1934 ("Exchange Act"):** making it unlawful for any person to "(1) enter into an order or orders for the purchase or sale of a security…with the knowledge that an order of substantially the same size, at substantially

---

[1] In relevant part, California Labor Code section 2865 states, "An employee who is guilty of a culpable degree of negligence is liable to his employer for the damages thereby caused to the employer." Cal. Lab. Code § 2865.

the same time and at substantially the same price,… has been or will be entered by or for the same or different parties, for the purpose of creating a false or misleading appearance of active trading…[matched trading]; or (2) to effect, alone or with one or more other persons, a series of transactions in any security…creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others. [marking the close]"

- **Violation of Section 10(b) of the Exchange Act and Rule 10b-5:** making it "unlawful for any person, directly or indirectly, acting intentionally, knowingly or recklessly,…[t]o employ any device, scheme or artifice to defraud…" in connection with the **purchase or sale** of any security. Further, this law makes it unlawful to violate Rule 10b-5 (promulgated under this law) which prohibits virtually identical conduct. [matched trades and marking the close]

- **Violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"):** making unlawful conduct virtually identical to that outlined above in connection to Section 10(b), but in this case, relating only to the **sale** of any security.

- **Aiding and Abetting Violations of Sections 9(a) and 10(b) of the Exchange Act and Rule 10b-5:** making it unlawful for Kwak to "knowingly" provide "substantial" assistance to co-Defendant Chauncey D. Steele ("Steele") during Steele's alleged commission of the violations of Sections 9(a) and 10(b).

Higgins Decl., Ex. A (SEC Complaint, ¶¶ 51-62, 67-70).

### D. The Jury Found A Fraudulent Scheme Between Two Co-Defendants, Although Most Claims Against Kwak Will Be Retried In September 2008

At the initial trial of the SEC action in November 2007, the jury found Kwak's co-defendant Sheldon Strauss liable on all counts: for violating Sections 9(a)(1), 9(a)(2), and 10(b) of the Exchange Act and Section 17(a) of the Securities Act, and for aiding and abetting Steele.[2] *See* Higgins Decl., Ex. B (SEC action Jury Verdict).

With respect to Kwak, the jury found both Kwak and his co-defendant Stephen Wilson not liable on the Section 17(a) claim, but was unable to reach a verdict on the remaining four counts. *See* Higgins Decl., Ex. B; Complaint, ¶ 25. Accordingly, the SEC is scheduled to retry those counts in a second jury trial commencing September 29, 2008. *See* Higgins Decl., ¶ 2.

///
///

---

[2] Steele, as well as several other of the co-defendants in the SEC action, settled out of the case prior to the November 2007 trial. (*See* Complaint, ¶ 23).

**E.  Kwak Declines To Stipulate To Staying The Present Action**

During the parties' meet and confer process regarding their Joint 26(f) Report, counsel for Morgan Stanley explained to Plaintiff's counsel that Morgan Stanley believes that proceedings in this action should be stayed pending resolution of the underlying SEC action. *See* Higgins Decl., ¶ 3; Joint Rule 26(f) Report (July 24, 2008). Defense counsel further explained that the outcome of the SEC action will substantially affect this action and may be dispositive of critical issues, and that proceeding forward in this action prior to resolution of the SEC action may result in unnecessary discovery and conflicting rulings. *See* Higgins Decl., ¶ 3; Joint Rule 26(f) Report (July 24, 2008). Plaintiff's counsel responded that Kwak is not willing to stipulate to a stay of proceedings in this matter pending resolution of the SEC action. *See* Higgins Decl., ¶ 3; Joint Rule 26(f) Report (July 24, 2008). Accordingly, Morgan Stanley is left with no choice but to file the present motion.

**III.  A STAY OF THE PRESENT ACTION PROMOTES JUDICIAL ECONOMY AND EFFICIENCY, PREVENTS UNNECESSARY LITIGATION COSTS AND MINIMIZES THE RISK OF CONFLICTING RULINGS**

**A.  The Court Has Broad Discretion To Stay The Present Action**

The Court has inherent power to stay its proceedings if doing so would best serve the causes of judicial economy, minimization of legal expense, and fairness to the litigants. *See Landis v. North American Co.*, 299 U.S. 248, 254-55 (1934) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 806 (N.D. Cal. 1998) (*citing Landis*). As noted by the United States Court of Appeal for the Ninth Circuit,

> [a] trial court may, with propriety, find it efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

This rule applies even where "the issues in such proceedings are [not] necessarily controlling of the action before the court." *Id.* (affirming district court's order granting a stay

1  pending resolution of arbitration of some of the claims asserted in the district court action). *See*
2  *also Kerotest Mfg. Co. v. C-O Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952) (courts
3  have wide discretion to stay later filed actions in order to avoid duplicative litigation, even where
4  the parties are not the same); *Bechtel Corp. v. Local 215, Laborer's Int'l Union of North America*,
5  544 F.2d 1207,1215 (3d Cir. 1976) ("[i]n the exercise of its sound discretion, a court may hold
6  one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be
7  dispositive of the issues"); *Rivers v. The Walt Disney Company*, 980 F.Supp. 1358, 1360 (C.D.
8  Cal. 1997) (granting stay pending consolidation decision by multi-district litigation panel). When
9  ruling on a motion to stay, a district court should consider several factors: (1) potential prejudice
10 to the non-moving party if the action is stayed; (2) hardship and inequity to the moving party if
11 the action is not stayed; (3) the judicial resources that would be saved by avoiding duplicative
12 litigation; and (4) the potential for conflicting rulings. *Nielsen v. Merck & Co.*, Case No. C07-
13 00076 MJJ, 2007 U.S. Dist. LEXIS 21250, at *4 (N.D. Cal. Mar. 15, 2007) (citing *Rivers*, 980 F.
14 Supp. at 1360); *see also CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (noting that "the
15 competing interests which will be affected by the granting or refusal to grant a stay" must be
16 weighed, including "the possible damage which may result from the granting of a stay, the
17 hardship or inequity which a party may suffer in being required to go forward, and the orderly
18 course of justice measured in terms of the simplifying or complicating of issues, proof, and
19 questions of law which could be expected to result from a stay").
20     Here, the balance of the relevant factors weighs in favor of staying the present action
21 pending resolution of the SEC action scheduled for trial in September 2008.

22 **B.    A Stay Will Preserve Judicial Resources And Promote Efficiency Because The Outcome In The SEC Action Will Affect And May Determine Critical Issues In The Present Action**

24 **1.    The Outcome Of The SEC Action Will Affect And May Determine Whether Morgan Stanley Must Indemnify Kwak Under Section 2802**

26     In order to show that Morgan Stanley has a duty to indemnify Kwak under California
27 Labor Code section 2802, Kwak first will need to prove that he acted in the course and scope of
28 his employment when he engaged in the conduct at issue in the SEC action. *Cassady v. Morgan,*

*Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 224-255 (2006) ("[b]ecause proof that the defense costs were incurred by the employee in direct consequence of the discharge of his or her duties is an element of the [indemnification] claim, the employee has the burden to prove the conduct on which he or she was sued arose in the course and scope of the employment"). In order to determine if an employee acts within the course and scope of employment, California courts apply the doctrine of respondeat superior. *Id.* at 231. An employee acts within the course and scope of employment only where the employee's conduct was "foreseeable," such that it would not "seem unfair to include the loss resulting from it among other costs of the employer's business." *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 618-619 (1975). An employee is not acting within the course and scope where the employee "*substantially* deviates from the employment duties for personal purposes." *Farmers Ins. Group v. County of Santa Clara*, 11 Cal. 4th 992, 1003 (1995) (citing *Alma W. v. Oakland Unified School Dist.*, 123 Cal. App. 3d 133, 130 (1981)) (emphasis in original). Here, if a jury in the SEC action determines that Kwak engaged in fraudulent conduct "in an attempt to enrich [himself] and avoid losses," that finding would have a collateral estoppel effect as to that issue in the present case. *See, e.g., San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336 (2005) ("under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case). Although Morgan Stanley need not prove fraud by Kwak in the present action, certainly a conclusive jury finding that Kwak engaged in fraud for his own personal benefit as to the exact transactions and occurrences at issue in the present case would have direct bearing upon – and may conclusively determine – whether or not Kwak acted within the course and scope of his employment. Indeed, fraudulently manipulating stock prices for personal gain plainly constitutes a substantial deviation from Kwak's employment duties for personal purposes, and therefore is conduct outside the course and scope of employment.

Similarly, in order to recover in the present action, Kwak also will need to show that the SEC action is "unfounded." *See O'Hara v. Teamsters Union Local # 856*, 151 F.3d 1152, 1158 (9th Cir. 1998) ("in order to be acting in 'discharge of (his) duties' the employee must have acted

'within the course and scope of. . .employment' *and* the action against the employee must be 'unfounded'") (citing *Devereaux v. Latham & Watkins,* 32 Cal. App. 4th 1571 (1995) and quoting *Los Angeles Policy Protective League v. City of Los Angeles* 27 Cal. App. 4th 168 (1994); *but see Jacobus v. Krambo Corp.,* 78 Cal. App. 4th 1096, 1101 (2000) (rejecting view that in addition to showing "course and scope," an employee also must show the action was unfounded). Obviously, the jury's determination in the SEC action as to whether or not Kwak committed the securities violations charged will directly bear upon – and may conclusively determine – whether or not the SEC action is "unfounded."

Further, even if a jury does find that Kwak is entitled to indemnification in the present case, he will only be entitled to recover "reasonable" expenses actually incurred. *Grissom v. Vons Cos., Inc.* (1991) 1 Cal. App. 4th 52, 55 (an employer's duty under Section 2802 includes necessary defense costs, but does not require that the employer actually provide the employee with defense counsel); *Jacobus v. Krambo Corp.,* 78 Cal. App. 4th at 1104 ("[w]hether the legal expenses incurred by an employee were necessary requires an inquiry into reasonableness"). Here, until completion of the SEC action, the parties in the present action will not be in a position to determine the extent of the defense costs incurred by Kwak, nor which of those costs were reasonable. *Grissom v. Vons Cos., Inc.,* 1 Cal. App. 4th at 58 (the reasonableness of any expenditure "must turn on its own facts" and is ascertained by "an inquiry into what was reasonable under the circumstances"). Further, until resolution of the SEC action, the parties will not know if Kwak has incurred any monetary losses stemming from a potential finding of liability. Accordingly, not only will the SEC action be determinative of these potential issues, but it will literally be impossible to adjudicate them before the SEC action is completed.

### 2. The Outcome Of The SEC Action Will Affect And May Determine Whether Morgan Stanley Is Entitled To A Set-Off From Kwak

As to Morgan Stanley's defense under California Labor Code section 2865, in the event that a jury in the present action finds that Kwak is entitled to indemnification, Morgan Stanley will be entitled to a set-off for any expenses incurred by Kwak as a result of his own culpable negligence. *See* Cal. Lab. Code § 2865 ("[a]n employee who is guilty of a culpable degree of

negligence is liable to his employer for the damage thereby caused to the employer"). If a jury in the SEC action finds Kwak liable for securities fraud, such a finding of fraudulent conduct by Kwak would certainly bear upon – and may dispose of – the issue in the present action as to whether or not Kwak acted with culpable negligence (a lesser standard).

In short, because the outcome of the underlying SEC action undoubtedly will at least bear upon, and may well determine, several key issues in the present action, staying the present action until resolution of the SEC action will promote the interests of judicial economy and efficiency. *See Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d at 1465 (granting a stay is appropriate where "resolution of independent proceedings which bear upon the case," even when "the issues in such proceedings are [not] necessarily controlling of the action before the court"); *Bechtel Corp. v. Local 215, Laborer's Int'l Union of North America*, 544 F.2d at 1215 ("[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues").

### C. A Stay Will Prevent Undue Hardship And Wasted Resources By Avoiding Unnecessary Litigation And Discovery Costs

#### 1. A Stay Could Obviate The Need For Cumbersome And Expensive Discovery Of Key Issues

Although the legal claims in the SEC action and the present action differ, both actions are based upon the exact same underlying transactions and occurrences: Kwak's trading practices with respect to CTT. Similarly, many of the same critical issues exist in both cases, even if they constitute different elements of different legal claims. Accordingly, staying the present action until resolution of the SEC action may obviate the need for expensive, complicated and time-consuming discovery and expert witnesses, may lead one of both parties to concede certain issues in the present action, and may lead the parties to resolve the present action based on the evidence and/or outcome in the SEC action. *See, e.g., Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979) (recognizing that the avoidance of duplicative discovery, pretrial proceedings and adjudication of a case's merits constitute legitimate grounds for granting a discretionary stay).

///

For example, one of Morgan Stanley's arguments in defense of Kwak's 2802 claim will be that Kwak's actions were not in the course and scope of employment because he engaged in fraudulent conduct for his own personal benefit, and a similar issue is raised by Morgan Stanley's defense under Labor Code section 2865 which requires a showing of culpable negligence. In the absence of a jury finding on the issue of fraud in the SEC action, the parties in the present action will need to engage in extensive and burdensome discovery regarding whether Kwak engaged in the fraudulent conduct as charged. Similarly, Morgan Stanley will soon need to retain at least one expert[3] to testify about fraud-on-the market, including what it is and how it is demonstrated by the underlying trading patterns (the subject of the very proof that will be presented at the SEC trial). Such experts (including similar experts retained by plaintiff) will also need to prepare a reports, be subject to deposition, and otherwise prepare for trial in the present action. If, however, the present motion is stayed and the jury in the SEC action finds that Kwak <u>did</u> engage in fraud-on-the-market (a finding which would have a collateral estoppel effect here), such a finding would likely obviate the need for expensive, complicated, and time-consuming fact and expert discovery because the issue of whether or not Kwak engaged in fraud could be proven simply by introduction of the jury verdict.

Accordingly, because staying the present action could obviate the need for expensive and time-consuming discovery, the interests of economy, efficiency, and avoidance of undue hardship will best be served by granting Morgan Stanley's request for a stay. *See Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d at 864; *Rivers v. The Walt Disney Company*, 980 F.Supp. at 1360 ("hardship and inequity to the moving party of the action is not stayed" and "the judicial resources that would be saved by avoiding duplicative litigation" are factors to consider when ruling on a motion to stay).

///

///

///

---

[3] The deadline for disclosure of expert witnesses is November 7, 2008. *See* Case Management Conference Order (July 25, 2008)

OHS West:260482915.3    - 10 -    MEMO OF P&A'S IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION OF RELATED SEC ACTION

MPA 14

### 2. The Jury's Findings In the SEC Action Could Make This Case Amenable To A Swift Dispositive Motion Without The Need For Extensive Discovery Or Litigation

Staying the present action until resolution of the SEC action could obviate extensive litigation time and costs in a second major way: depending on the outcome of the SEC action, the present action could become amenable to a dispositive motion without the need for expensive and time-consuming discovery or litigation. For example, if a jury in the SEC action finds that Kwak did engage in fraudulent conduct for his own personal benefit, Morgan Stanley could bring a dispositive motion on the grounds that, given the jury's finding, Kwak cannot show, as a matter of law, that (1) he acted in the course and scope of his employment, and (2) the underlying SEC action was unfounded, and furthermore, as a matter of law, Morgan Stanley's affirmative defense under Labor Code section 2865 must prevail. Given the potential for a swift and concise dispositive motion, as opposed to full-blown litigation and possibly a jury trial, it makes sense for both the Court and the parties to stay the present action until resolution of the SEC action. *See, e.g., Rivers v. The Walt Disney Company*, 980 F.Supp. at 1360 ("hardship and inequity to the moving party of the action is not stayed" and "the judicial resources that would be saved by avoiding duplicative litigation" are factors to consider when ruling on a motion to stay).

### D. Proceeding With The Present Action Could Lead To Conflicting Rulings

Although trial in the SEC action is scheduled to commence on September 29, 2008, any number of contingencies could delay the final resolution of that action, including a continued trial date, another hung jury, or an appeal. If such were the case, the present action could actually proceed to dispositive motions or trial prior to resolution of the SEC action. Such a scenario presents a significant risk of conflicting rulings. For example, if a jury in the present action determines that Kwak acted in the course and scope of his employment (and therefore did not engage in fraudulent conduct for his own personal benefit), but a jury in the SEC action later determines that Kwak did engage in fraudulent conduct in an attempt to enrich himself and avoid losses, such rulings obviously would conflict with one another. *See* Section III, B, *supra*. Accordingly, the Court should stay the present action pending resolution of the SEC action in order to avoid the risk of inconsistent rulings. *See Sun Pac. Mktg. Coop., Inc. v. Dimare Fresh*,

OHS West:260482915.3    - 11 -    MEMO OF P&A'S IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION OF RELATED SEC ACTION

MPA 15

*Inc.*, Case No. CIV-F-06-1404 AWI, 2007 U.S. Dist. LEXIS 32437 at *14 (E.D. Cal. April 19, 2007) (recognizing that "the risk of conflicting rulings justifies a discretionary stay").

### IV. THE WASTE OF JUDICIAL RESOURCES, COST OF DUPLICATIVE DISCOVERY, AND RISK OF CONFLICTING RULINGS OUTWEIGHS ANY POTENTIAL PREJUDICE TO KWAK

Kwak likely will argue that staying the present action will prejudice him because it will delay adjudication of his indemnification claims. The Court should reject any such argument for two primary reasons. First, trial of the SEC action is currently scheduled to commence on September 29, 2008 – just three short weeks after the hearing on this motion. Accordingly, given the relatively short delay, any possible prejudice to Kwak would be minimal. Second, and more importantly, case law is clear that when ruling on a motion to stay, courts must balance several interests, including not only potential prejudice to the non-moving party if the action is stayed, but also hardship and inequity to the moving party if the action is not stayed, the judicial resources that would be saved by avoiding duplicative litigation, and the potential for conflicting rulings. *Nielsen v. Merck & Co.*, 2007 U.S. Dist. LEXIS 21250, at *4 (citing *Rivers*, 980 F. Supp. at 1360). Here, the undeniable waste of judicial resources, hardship to <u>both parties</u> in the form of potentially unnecessary fact and expert discovery and other litigation costs, and the risk of conflicting rulings outweighs any potential prejudice to Kwak. *See* Sections III, B-D, *supra.*

In short, the balance of the relevant considerations weigh in favor of staying the present action pending resolution of the SEC action.

### V. CONCLUSION

For the foregoing reasons, Morgan Stanley respectfully requests that the Court exercise its discretion and grant this motion in its entirety, thereby staying the present action pending resolution of the SEC action.

Dated: August 8, 2008.

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____s/Trish M. Higgins_____
Trish M. Higgins
Attorneys for Defendant
Morgan Stanley & Co. Incorporated

OHS West:260482915.3   - 12 -   MEMO OF P&A'S IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION