1  Donald A. English, Esq.    (State Bar No. 115569)
   Jeffrey E. Flynn, Esq.    (State Bar No. 167927)
2  ENGLISH & GLOVEN
   A Professional Corporation
3  550 West "C" Street, Suite 1800
   San Diego, California 92101
4  Telephone: (619) 338-6610
   Facsimile: (619) 338-6657
5
   Attorneys for Plaintiff
6  Richard A. Kwak

7

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10  RICHARD A. KWAK,                     ) Case No. 08-CV-689 BEN LSP
                                         )
11           Plaintiff,                  ) **PLAINTIFF RICHARD A KWAK'S**
                                         ) **MEMORANDUM OF POINTS AND**
12                                       ) **AUTHORITIES IN OPPOSITION TO**
         v.                              ) **DEFENDANT MORGAN STANLEY &**
                                         ) **CO., INCORPORATED'S MOTION TO**
13                                       ) **STAY THE PRESENT ACTION**
                                         )
14  MORGAN STANLEY & CO.,                )
    INCORPORATED; and DOES 1 through 20, ) Date:   September 8, 2008
15  inclusive,                           ) Time:   10:30 a.m.
                                         ) Dept.:  Courtroom 3
16           Defendants.                 ) Judge:  Hon. Roger T. Benitez
                                         )
17  _____ )

18       Plaintiff Richard A. Kwak respectfully submits the following memorandum of points and

19  authorities in opposition to defendant Morgan Stanley & Co., Incorporation's motion to stay the present

20  action.

21  ///

22  ///

23  ///

24

25

26

27

28

1

TABLE OF CONTENTS

2

3    I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    II.   RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5    III.  RELEVANT PROCEDURAL SETTING  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6    IV.   CALIFORNIA LABOR CODE SECTION 2802  . . . . . . . . . . . . . . . . . . . . . . . . 4

7    V.    AN ORDER STAYING THE PRESENT ACTION WOULD IMPOSE AN
          UNDUE AND PREJUDICIAL HARDSHIP UPON PLAINTIFF . . . . . . . . . . . . . . . . . 4
8
          A.    Mr. Kwak has an Absolute Right to Pursue His Labor Code Section
9                2802 Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10         B.    A Balancing of Relevant Considerations Mandates an Order Denying
                 Morgan Stanley's Request for a Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
11
                 1.    Morgan Stanley Will Suffer no Hardship if this Case Moves
12                     Forward . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13               2.    A Stay Would Impose Significant and Undue Hardship on
                       Mr. Kwak  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
14
                 3.    The Interests of Judicial Economy, Convenience, and Fairness
15                     do not Warrant a Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16         C.    The Cases Cited by Morgan Stanley are Readily Distinguishable  . . . . . . . . . . . . . . 8

17         D.    Morgan Stanley Should be Judicially and/or Equitably Estopped From
                 Seeking a Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
18
           E.    Mr. Kwak Should be Allowed to Proceed With Discovery and Move
19               this Case Towards Trial  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

20   VI.   ALTERNATIVELY, MORGAN STANLEY'S MOTION FOR A STAY IS
           PREMATURE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
21
     VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
22
23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

3   Federal Cases

4   Bechtel Corp. v. Local 215, Laborers' Intern. Union of North America, AFL-CIO
5       544 F.2d 1207 (C.A.Pa. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

6   Bedel v. Thompson
        103 F.R.D. 78 (S.D.Ohio 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7   Hill v. Mitchell
        30 F.Supp.2d 997 (S.D.Ohio 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
8
9   Int'l Bhd. of Elec. Workers v. AT & T Network Sys.
        879 F.2d 864 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10  Landis v. North American Co.
        57 S.Ct. 163 (U.S. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
11
12  Leyva v. Certified Grocers of California, Ltd.
        593 F.2d 857 (C.A.Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13  Lynch v. Johns-Mansville Corp.
        710 F.2d 1194 (6th Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
14
15  Mediterranean Enterprises, Inc. v. Ssangyong Corporation
        708 F.2d 1458 (C.A.Cal. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16  Rivers v. Walt Disney Corporation
        980 F.Supp. 1358 (C.D.Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
17
18  San Remo Hotel, L.P. v. City and County of San Francisco, California
        125 S.Ct. 2491 (U.S. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

19

20  State Cases

21  Cassady v. Morgan Lewis & Bockius
        145 Cal.App.4th 220 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
22
23  Douglas v. Los Angeles Herald-Examiner
        50 Cal.App.3d 449 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

24  Jacobus v. Krambo Corp.
        78 Cal.App.4th 1096 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
25
26  Plancarte v. Guardsmark, LLC
        118 Cal.App.4th 640 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

27

28

1

<u>State Statutes</u>

2

Labor Code section 2802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## **INTRODUCTION**

Plaintiff Richard Kwak ("Mr. Kwak") initiated this action against defendant Morgan Stanley & Co., Incorporated ("Morgan Stanley") to recover benefits pursuant to California Labor Code section 2802 (hereinafter "Section 2802"). Section 2802 requires employers to indemnify employees for all necessary expenditures or losses incurred by the employee in the direct discharge of his or her duties, or in obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Morgan Stanley has asked this Court to stay Mr. Kwak's Section 2802 action pending the resolution of a Connecticut District Court case in which Mr. Kwak is a party. Mr. Kwak submits that a proper balancing of relevant consideration reveals that a stay of this action is not warranted and that a stay would subject him to extreme prejudice. More specifically, Mr. Kwak is one of several defendants named by the Securities and Exchange Commission ("SEC") in a District Court of Connecticut case, Securities and Exchange Commission v. Competitive Technologies, Inc., et al., USDC, District of Connecticut Case No. 3:04cv1331 JCH ("SEC action"), involving the alleged manipulation of a particular stock. The undisputed facts as to the trading activity at issue in the SEC action are as follows:

- • all of the trading at issue in which Mr. Kwak was involved occurred while Mr. Kwak was employed by Morgan Stanley;

- • all of the trades were made during regular business hours from Morgan Stanley's offices;

- • Mr. Kwak maintained the subjective belief that all of the trading activity was in compliance with all applicable laws, industry regulations, guidelines, and all of Morgan Stanley's own internal policies and procedures;

- • all of the trades were reviewed, supervised, and approved by Morgan Stanley; and

- • Morgan Stanley took and has retained commissions on each of the trades.

1

Mr. Kwak submits these facts establish as a matter of law that the conduct targeted by the SEC occurred as a result of the direct discharge of Mr. Kwak's employment with Morgan Stanley and/or in obedience to the directions of his employer and, thus, that Mr. Kwak is entitled to reimbursement under Section 2802.

Under the facts and evidence presented, Morgan Stanley's liability is certain.  Morgan Stanley, however, seeks to forestall such an adjudication until the balance of the SEC action is resolved.  As is more fully set forth below, an order imposing a stay does not further the interests of judicial economy or convenience as the two proceedings are wholly dissimilar.  Moreover, the imposition of a stay would impose a significant and undue prejudice upon Mr. Kwak.  This Court should not allow that to happen. Further, a denial of a stay will not subject Morgan Stanley to any hardship.

An order denying Morgan Stanley's motion is appropriate.

## II.

## RELEVANT FACTUAL BACKGROUND

The particular facts which give rise to both the SEC action and Mr. Kwak's Section 2802 claims are set forth in the Declaration of Richard A. Kwak in Support of Opposition to Defendant Morgan Stanley & Co., Incorporated's Motion to Stay the Present Action ("Kwak Declaration") that is filed herewith.  Each of the facts set forth therein are incorporated by reference into this opposition as though fully set forth herein.

## III.

## RELEVANT PROCEDURAL SETTING

On March 13, 2008, Mr. Kwak filed the instant Section 2802 action in the San Diego Superior Court.

On April 15, 2008, Morgan Stanley filed its Answer and a notice of removal in Federal Court.

On June 19, 2008, an Early Neutral Evaluation Conference went forward with Magistrate Judge Leo S. Papas.

On July 14, 2008, the parties participated in their Rule 26 conference.  The parties' Rule 26 report was filed on July 24, 2008.

On July 25, 2008, this Court issued its Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings and set the following dates:

- Any motion to join other parties, to amend the pleadings, or to file additional pleadings is to be filed on or before September 12, 2008;

- A Mandatory Settlement Conference is scheduled for October 15, 2008, at 9:00 a.m., in the chambers of Magistrate Judge Leo S. Papas;

- Expert exchange between the parties is to occur on or before November 7, 2008;

- Any supplement to the expert exchange is to occur on or before November 21, 2008;

- Expert written reports are to be provided to other parties no later than January 9, 2009;

- Any supplement to the expert reports is due on or before January 23, 2009;

- All discovery, including expert discovery, is to be completed on or before February 6, 2009;

- All motions, other than motions to amend or join parties, or motions in limine are to be filed on or before March 9, 2009;

- The parties' Memoranda of Contentions of Fact and Law in compliance with Local Rule 16.1(f)(2) is to be filed on or before May 11, 2009;

- Pretrial Disclosure requirements of Federal Rules of Civil Procedure, Rule 26, subdivision (a)(3), are due on or before May 11, 2009;

- The parties' Local Rule 16.1(f)(4) meeting is to occur on or before May 18, 2009;

- The proposed final pretrial conference order is to be served and lodged on or before May 26, 2009; and

- The final pretrial conference is to be held on June 1, 2009, at 10:30 a.m., before the Honorable Roger T. Benitez, United States District Court Judge.

On August 8, 2008, Morgan Stanley filed its motion to stay Mr. Kwak's Section 2802 action pending the resolution of the SEC action. Mr. Kwak opposes this motion as set forth herein.

3

IV.

**CALIFORNIA LABOR CODE SECTION 2802**

California Labor Code section 2802 provides, in pertinent part, as follows:

> (a)  An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.
>
> . . .
>
> (c)    For purposes of this section, the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to, attorney's fees incurred by employee enforcing the rights granted by this section.

(Labor Code, § 2802, subds. (a) and (c).)

Case law establishes that if an employee is sued solely and exclusively because of acts performed for, at the direction of, and with the authorization and approval of the employer, which acts were specifically ratified and approved by the employer, then the employee is entitled to indemnity under Section 2802.  (Douglas v. Los Angeles Herald-Examiner, 50 Cal.App.3d 449, 462.)

V.

**AN ORDER STAYING THE PRESENT ACTION WOULD IMPOSE AN UNDUE**

**AND PREJUDICIAL HARDSHIP UPON PLAINTIFF**

A.    **Mr. Kwak has an Absolute Right to Pursue His Labor Code Section 2802 Claim**

At the outset, the court should recognize that Mr. Kwak has the absolute right to pursue his Section 2802 and related claims against Morgan Stanley.  As set forth in the Declaration of Mr. Kwak, filed in support of this opposition, the undisputed facts establish that Mr. Kwak was employed by Morgan Stanley when each of the trades at issue were made (Kwak Declaration, ¶¶ 3, 9), that Mr. Kwak maintained the subjective belief that all of the trades were made in compliance with all applicable laws, industry regulations and guidelines, and Morgan Stanley's own internal policies and procedures (Kwak Declaration, ¶ 7), that Morgan Stanley reviewed, supervised and approved each of the trades (Kwak Declaration, ¶ 9), that Morgan Stanley took and has retained commissions on each of the trades (Kwak Declaration, ¶ 10), and that Morgan Stanley previously provided Mr. Kwak with a defense during the

1    course of the SEC's investigation (Kwak Declaration, ¶ 11).  These facts strongly suggest – if not

2    conclusively determine – that the subject trading activity was broadly incidental to Morgan Stanley's

3    employment enterprise.

4        The facts further demonstrate that Mr. Kwak was forced to secure legal counsel at his own

5    expense, that he did so at great cost and personal sacrifice (Kwak Declaration, ¶ 16), that he has

6    successfully defended one of the SEC's claims (Kwak Declaration, ¶ 18), and that he has been and

7    continues to suffer significant harm as a direct result of Morgan Stanley's refusal to honor its mandatory

8    statutory indemnification obligations (Kwak Declaration, ¶¶ 20-21, 32).  These facts establish the accrual

9    of a Section 2802 indemnity claim and the elements necessary to perfect such a claim.

10   **B.    A Balancing of Relevant Considerations Mandates an Order Denying Morgan Stanley's**

11   **Request for a Stay**

12       Morgan Stanley claims that staying the indemnity action until the SEC action is fully and finally

13   resolved will best serve the interests of judicial economy and efficiency, will prevent undue hardship to

14   the parties in the form of unnecessary and expensive litigation and discovery costs, and will minimize

15   the risk of inconsistent rulings.  Morgan Stanley further claims that any prejudice which may be imposed

16   upon Mr. Kwak as a result of a stay is diminished by the fact that the retrial of the SEC action is

17   scheduled to commence on September 29, 2008 – just three weeks after the hearing on the present

18   motion.  As is more fully set forth below, each of these arguments lacks merit and is contradicted by the

19   evidence.

20       Federal courts have the inherent authority to stay a case and hold it in abeyance.  (See, Int'l Bhd.

21   of Elec. Workers v. AT&T Network Sys., 879 F.2d 864 (6th Cir.1989) (citing Landis v. N. Am. Co., 299

22   U.S. 248, 255 (1936)).  Before granting a party's motion to stay a case and hold it in abeyance, however,

23   the moving party has the burden to evaluate three facts: (1) the hardship the movant will endure if the

24   case goes forward; (2) the injury to the opposing party; and (3) the public's interest, "including the

25   judiciary's interest in efficiency, economy, and fairness."  (Hill v. Mitchell, 30 F.Supp.2d 997, 1000

26   (S.D.Ohio 1998) (citing Landis v. N. Am. Co., supra, 299 U.S. 248); Lynch v. Johns-Manville Corp.,

27   710 F.2d 1194 (6th Cir.1983)); Bedel v. Thompson, 103 F.R.D. 78 (S.D.Ohio 1984)).  A fair balancing

28   of the relevant considerations establishes that Morgan Stanley has failed to satisfy its burden.

1               **1.      <u>Morgan Stanley Will Suffer no Hardship if this Case Moves Forward</u>**

2             The initial consideration when evaluating a motion for a stay is whether the moving party will

3 suffer any hardship if the case proceeds forward.  Mr. Kwak submits that Morgan Stanley has failed to

4 submit any competent evidence that it would, e.g., Morgan Stanley, the defendant in the Section 2802

5 action, has not submitted any declarations which present evidence of such a hardship.

6             Morgan Stanley, therefore, has failed to present evidence sufficient to carry its burden of this

7 consideration.  Morgan Stanley's other arguments are addressed below.

8               **2.      <u>A Stay Would Impose Significant and Undue Hardship on Mr. Kwak</u>**

9             The second consideration when evaluating a motion to stay is the prejudice Mr. Kwak would

10 suffer if the action were stayed.  Morgan Stanley argues the prejudicial effect of any stay is far

11 outweighed by the potential for wasted judicial resources and the cost of duplicative discovery.  These

12 arguments are not persuasive and there has been no evidence submitted which supports them.  Rather,

13 the overwhelming evidence reflects that Mr. Kwak would suffer significant and potential irreparable harm

14 if the action were stayed.  For example, Mr. Kwak has been forced to expend significant resources to fund

15 his defense of the SEC action for the last four years.  (Kwak Declaration, ¶¶ 14, 16, 20-21.)  He has been

16 absolved of any liability on one count following a trial.  (Kwak Declaration, ¶ 18.)  This fact gives

17 Mr. Kwak an absolute legal right to pursue his Section 2802 claim without delay.

18               **3.      <u>The Interests of Judicial Economy, Convenience, and Fairness do not Warrant a</u>**

19                    **<u>Stay</u>**

20             The third consideration when evaluation a motion to stay concerns the public's interest, including

21 the judiciary's interest in efficiency, economy, and fairness.  Morgan Stanley contends that a stay would

22 preserve judicial resources and promote efficiency because the outcome of the SEC action will affect and

23 may determine critical issues in this Section 2802 action.  Morgan Stanley claims that issues such as

24 course and scope, whether the SEC action is unfounded, and/or the reasonableness of Mr. Kwak's claim

25 for indemnification will be determined in the SEC action.  Not true.

26             Course and scope is not at issue in the SEC action.  Rather, the three remaining causes of action

27 to be tried concern whether Mr. Kwak, when engaging in the trading activity at issue, violated Section

28 9(a) of the Exchange Act of 1934 ("Exchange Act"), violations of Section 10(b) of the Exchange Act and

6

1   Rule 10b-5, and/or aiding and abetting violations of Sections 9(a) and 10(b) of the Exchange Act and

2   Rule 10b-5.  There are no securities claims at issue in this Section 2802 action.  The issues are essentially

3   limited to course and scope which will be determined in the SEC action.

4           Moreover, Mr. Kwak is not required to prove that the SEC action is unfounded to prevail on his

5   Section 2802 claim.  Section 2802, on its face, does not require that the party seeking indemnification

6   prove that the third party action is unfounded.  Recent case law has also clarified that the party seeking

7   indemnity need not establish that the third party action was unfounded.  (See, <u>Jacobus v. Krambo Corp.</u>,

8   78 Cal.App.4th 1096, 1104 (2000) [rejecting view that in addition to showing "course and scope," an

9   employee must also show that the action is unfounded]; <u>Cassady v. Morgan Lewis & Bockius</u>,

10  145 Cal.App.4th 220, 230-231 (2006) [right to indemnity is not dependent upon finding that underlying

11  action was unfounded].)   Further, Section 2802 cases hold that the employer must indemnify the

12  employee for all costs associated with the defense of the third party action as well as any judgment

13  obtained thereon.  (See, <u>Plancarte v. Guardsmark, LLC</u>, 118 Cal.App.4th 640, 648 (2004)).  Further still,

14  applicable case law provides that Morgan Stanley is estopped from challenging the reasonableness of the

15  necessary expenditures or losses sustained by Mr. Kwak given that it rejected each of Mr. Kwak's

16  requests for a defense prior to the initiation of the SEC action.  (See, <u>Douglas v. Los Angeles Herald-</u>

17  <u>Examiner</u>, 50 Cal.App.3d 449, 465 (1975) [if employer elects to run risk and refuses to defend and

18  indemnify, then employer bears consequences of Section 2802 if it is established that employee was sued

19  as a result of acts and conduct occurring within course and scope of employer]; <u>Plancarte v. Guardsmark,</u>

20  <u>LLC</u>, <u>supra</u>, 118 Cal.App.4th at 648.)

21          Morgan Stanley then argues that this action should be stayed as the outcome in the underlying

22  SEC action so that it can be determined whether Morgan Stanley is entitled to a setoff pursuant to

23  California Labor Code section 2865.  Morgan Stanley's arguments in this regard are misleading.  As set

24  forth above, it is not necessary for Mr. Kwak to establish that the SEC action is unfounded to prevail on

25  his Section 2802 claims.  Moreover, when the Court considers that Mr. Kwak maintained the subjective

26  belief that all of the trading activity complied with all applicable laws, industry regulations, guidelines,

27  and Morgan Stanley's own internal policies and procedures (Kwak Declaration, ¶ 7), the fact that Morgan

28  Stanley reviewed, supervised, and approved all of the trades at issue (Kwak Declaration, ¶ 9), and the fact

7

1  that Morgan Stanley itself received and has retained commissions on each of the trades (Kwak

2  Declaration, ¶ 10). Morgan Stanley should not be allowed to now challenge conduct which it facilitated,

3  approved of, benefitted from, and ratified.

4      Morgan Stanley then argues that a stay will prevent undue hardship and wasted resources by

5  avoiding unnecessary litigation and discovery costs. Morgan Stanley's argument in this regard is

6  disingenuous. Morgan Stanley has not presented any evidence of undue hardship, wasted resources, or

7  unnecessary litigation and/or discovery costs. As set forth above, the legal issues to be determined in the

8  SEC action are separate and distinct from those to be determined in this action. While there is nominal

9  crossover given the fact that Mr. Kwak is a party to both actions and that the trading activity at issue arose

10  from his employment with Morgan Stanley, the crossover essentially ends there.

11      Morgan Stanley then argues that a stay should be imposed so as to prevent the potential for

12  inconsistent rulings. This argument lacks merit as there is no potential for inconsistent rulings as the

13  legal claims at issue in the SEC action are completely different from those at issue in this Section 2802

14  action. Consideration of fairness also mandates that Morgan Stanley's motion be denied. Why should

15  Morgan Stanley, which participated in the subject trading activity in an equal or higher level than

16  Mr. Kwak, be entitled to delay his attempt to secure indemnity? The answer is it should not.

17      A proper evaluation of all relevant considerations mandates an order denying Morgan Stanley's

18  request.

19  **C.    The Cases Cited by Morgan Stanley are Readily Distinguishable**

20      Morgan Stanley has cited several cases in support of its request for a stay. A review of the cases,

21  however, reveals that they are factually and procedurally distinguishable from the issues at hand in this

22  litigation.

23      The Bechtel Corp. v. Local 215, Laborers' Intern. Union of North America, AFL-CIO, 544 F.2d

24  1207 (C.A.Pa. 1976), case is distinguishable as the holding sought to avoid a plaintiff's double recovery.

25  There, plaintiff Bechtel filed a complaint alleging damages for Local 215's violations of its contract

26  obligations and for violations of sections 301 and 303 of the Labor Management Relations act. (Bechtel

27  Corp. v. Local 215, Laborers' Intern. Union of North America, AFL-CIO, 544 F.2d 1207, 1209 (C.A.Pa.

28  1976).) Local 215 filed motions to dismiss alleging that proper forum was arbitration and that the action

1  should be dismissed pending arbitration.  (Id. at 1210.)  In the affirming the district court's stay, the Third

2  Circuit held the "arbitrator's resolution of the section 301 action [based on contract] may obviate the need

3  to pursue the section 303 action [based on tort] to trial."  (Id. at 1215.)  The Court noted that "the two

4  counts of Bechtel's complaint allege identical damages $12,000 per day for each day of the alleged work

5  stoppage."  (Id..)  "Although Bechtel [had] the right to prosecute its claim on both the contract theory

6  (under section 301) and the tort theory (under section 303), Bechtel [could not] recover damages more

7  than once."  (Id.)  If Bechtel prevailed in the arbitration of its section 301 claim for breach of contract and

8  was awarded the damages it claimed, Bechtel would have no further claim against the union under section

9  303.  (Id.)  Thus, staying the section 3033 proceeding was proper.  There is no such overlay in claims

10  and/or damages between the SEC action and Mr. Kwak's Section 2802 action.

11      The Landis v. North American Co., 57 S.Ct. 163 (1936), case is also distinguishable.  There, the

12  court was asked to stay an action challenging the Public Utility Holding Company Act of 1935 while the

13  Act's constitutionality was challenged in other districts throughout the country.  (Landis v. North

14  American Co., 57 S.Ct. 163 (U.S. 1936).)  Here, there is no potential of inconsistent judgments as in

15  Landis involved the interpretation of one statute, while claims based on the statute were pending in

16  multiple districts.

17      Leyva v. Certified Grocers of California, Ltd, 593 F.2d 857 (1979) is also distinguishable.  There

18  was one issue in Leyva - failure to pay overtime wages.  There, appellant truck drivers filed suit against

19  their employer for failure to pay overtime compensation in violation of the Fair Labor Standards Act and

20  under their collective bargaining agreements.  (Leyva v. Certified Grocers of California, Ltd., 593 F.2d

21  857, 859 (C.A.Cal. 1979).)  The agreements provided for a grievance procedure, culminating in a binding

22  arbitration.  (Id.)  The arbitration clauses applied to controversies regarding the application and

23  interpretation of the agreements.  (Id. at 861.)  The court concluded the FLSA claims were statutory rights

24  and outside the parameters of the arbitration clauses.  (Id. at 862.)  Before remanding the action to the

25  district court, the Ninth Circuit noted that FLSA claims could be stayed under the court's inherent power

26  to control its docket.  (Id. at 863.)  This was because, in resolving the contractual dispute, the arbitrator

27  would no doubt make findings as to what contract documents were controlling, the hours and work

28  pattern of the claimants, and the amount of wages paid to them.  (Id.)  These findings, as well as the

9

1   documents and testimony produced during the arbitration hearing, may have been of valuable assistance

2   to the court in resolving the Fair Labor Standards Act claims. (Id.) The Ninth Circuit remanded to the

3   district court to analyze the opportunity for a stay given the circumstances and inherent discretion of the

4   trial court. (Id. at 864-65). Here, there is no mandatory contractual arbitration, the result of which could

5   define issues central to the district court proceeding.

6       Mediterranean Enterprises, Inc. v. Ssangyong Corporation, 708 F.2d 1458 (1983) is also

7   distinguishable. There, appellant Ssangyong Corporation ("Ssangyong") appealed the district court's

8   order staying the action and sending to arbitration certain issues in the complaint. (Mediterranean

9   Enterprises, Inc. v. Ssangyong Corporation, 708 F.2d 1458, 1460 (C.A.Cal. 1983) Mediterranean

10  Enterprises, Inc. ("MEI") and Ssangyong signed a Formation of Joint Venture agreement, which

11  contained an arbitration clause, wherein any disputes arising under the agreement would be settled via

12  arbitration. (Id. at 1461.) After no venture was commenced, MEI commenced an action in district court.

13  (Id.) The complaint contained six counts against Ssangyong: breach of contract and breach of fiduciary

14  duty (counts 1, 2 and 4), inducing and conspiracy to induce breach of contract [the Trac Agency

15  Agreement] (count 7), quantum meruit (count 8), and conversion (count 9). (Id.) The court held counts

16  1, 2 and 4, alleging breach of the agreement and breach of the fiduciary duty created by the agreement,

17  clearly fell within the scope of the arbitration clause and were thus proper subjects for arbitration. (Id.

18  at 1464.) However, counts 7, 8 and 9 appeared to raise issues that were either primarily or wholly outside

19  the scope of the arbitration clause. (Id.) By sending "the issues raised by" counts 1, 2 and 4 to arbitration,

20  the district court authorized the arbitrator, in accordance with the expressed intention of the parties, to

21  decide those issues relating to the interpretation and performance of the agreement. Counts 1, 2 and 4

22  appeared to be completely arbitrable. By deciding those issues necessary to resolve counts 1, 2 and 4,

23  the arbitrator might well have decided issues which bear in some way on the court's ultimate disposition

24  of counts 7, 8 and 9. (Id. at 1465.) The Ninth Circuit held the district court did not abuse its discretion

25  in ordering the stay. (Id.) Here, the Section 2802 motion is not dependent on the resolution of the SEC

26  action.

27      Rivers v. Walt Disney Corporation, 980 F.Supp. 1358 (1997), is also distinguishable. There,

28  plaintiff employees brought a racial discrimination class action against employer Walt Disney

Corporation ("Walt Disney") in the Central District of California. (<u>Rivers v. Walt Disney Corporation</u>, 980 F.Supp. 1358-1359 (C.D.Cal. 1997).) In the Middle District of Florida, employee plaintiffs in another discrimination action against Walt Disney Corporation filed a motion with the Judicial Panel on Multidistrict Litigation (MDL Panel) to transfer and consolidate all racial discrimination cases against Walt Disney Corporation. (<u>Id</u>. at 1359.) The plaintiffs in <u>Rivers</u> sought an order to stay pending the MDL Panel's decision. (<u>Id</u>.) Defendant accused the plaintiffs of forum shopping. (<u>Id</u>.) The court held that there are two ways in which judicial resources could be conserved by staying the matter. (<u>Id</u>. at 1360.) First, if the case was consolidated with the other cases in Florida and the court was not assigned by the MDL Panel to preside over the consolidated litigation, the court would have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge. (<u>Id</u>.) And second, any efforts on behalf of the Court concerning case management would most likely have to be replicated by the judge that was assigned to handle the consolidated litigation if the MDL Panel does not consolidate the Disney cases in this Court. (<u>Id</u>. at 1360-61.) Therefore, there was a great deal of the Court's time and energy that was saved by staying the consolidated case pending the MDL Panel decision. (<u>Id</u>. at 1361.) In addition, even if the Court denied Plaintiffs' motion to stay, ruled upon more substantive motions, such as class certification, and then the matter was transferred to another court, there were no guarantees that an order by the Court would not later be vacated. (<u>Id</u>.) Finally, the Court noted a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved. (<u>Id</u>. at 1362.) Based on the foregoing, the Court granted the stay. (<u>Id</u>.) Here, the claims are separate and distinct, as are case management issues, the Courts' respective roles, and discovery in the two actions.

<u>San Remo Hotel, L.P. v. City and County of San Francisco, California</u>, 545 U.S. 323 (2005) is also distinguishable. There, the Court was presented with the question of whether an exception should be carved into the Full Faith and Credit statute, 28 U.S.C. 1738. (<u>San Remo Hotel, L.P. v. City and County of San Francisco, California</u>, 125 S.Ct. 2491, 2495 (U.S. 2005).) After the California courts rejected petitioners' various state-law takings claims, they advanced in the Federal District Court a series of federal takings claims that depended on issues identical to those that had previously been resolved in

11

1   the state-court action. (Id. at 2495.) In order to avoid the bar of issue preclusion, petitioners asked the

2   court to exempt from Section 1738's scope claims brought under the Takings Clause of the Fifth

3   Amendment. (Id. at 2495.) The court declined to do so. (Id. at 2507.)

4   **D.     Morgan Stanley Should be Judicially and/or Equitably Estopped From Seeking a Stay**

5        In its motion, Morgan Stanley argues that Mr. Kwak's trading activity at issue in the SEC action

6   was performed for Mr. Kwak's own benefit. That argument, however, is directly contradicted by the

7   following undisputed facts (which Morgan Stanley fails to mention in its motion) – the trades at issue

8   were made on behalf of Morgan Stanley's clients (which suggests that they benefitted therefrom), as well

9   as the fact that Morgan Stanley received and has retained commissions on each of the trades (thereby

10  establishing that Morgan Stanley has itself benefitted from the trades in question). Morgan Stanley's

11  claim that the trades were performed for Mr. Kwak's own benefit are therefore directly contradicted by

12  its own conduct and the overwhelming evidence in this matter.

13       These facts, when taken together with the additional undisputed facts that Morgan Stanley

14  reviewed, supervised, and approved all of the trades, its receipt and retention of commissions on each of

15  the trades, its ratification of the trading at issue, and its prior submissions to the SEC which take the

16  position that Mr. Kwak did not engage in any unlawful activity, establish that Morgan Stanley should be

17  judicially and/or equitably estopped from seeking a stay in this action. In other words, Mr. Kwak submits

18  it is patently unjust for Morgan Stanley to have reviewed, authorized, and ratified the trading activity at

19  question, to have defended Mr. Kwak for a period of years during the SEC investigation – all the while

20  maintaining his conduct was lawful, then suspend its defense leaving Mr. Kwak to face the SEC alone,

21  denying his requests to reinstate his defense, and instructing him to come back when his indemnity

22  demand is ripe, and to now turn around and claim that the prosecution of his claims should be stayed

23  while Morgan Stanley waits to see how the SEC fares in the retrial.

24       Equity mandates that Morgan Stanley be forced to address and respond to discovery and

25  adjudication of Mr. Kwak's Section 2802 claims.

26  ///

27

28

12

**E.**     **Mr. Kwak Should be Allowed to Proceed With Discovery and Move This Case Towards**
**Trial**

Mr. Kwak is prepared to initiate his discovery on Morgan Stanley so as to move this case forward and so that he is in a position to comply with all presently set dates in this action. Among other things, the discovery is designed to elicit evidence which confirms that Mr. Kwak was acting within the course and scope of his employment with Morgan Stanley at all relevant time periods, that Morgan Stanley itself reviewed, supervised, and approved the trades at issue, and that Morgan Stanley has received and retained commissions on each of the trades. Morgan Stanley's participation in this discovery poses no injustice or undue hardship upon it, nor has any such showing been made.

**VI.**

**ALTERNATIVELY, MORGAN STANLEY'S MOTION FOR A STAY IS PREMATURE**

Assuming that a motion for stay should be imposed at some point in time, Mr. Kwak submits that an order imposing a stay at this time is premature. As set forth above, a balancing of the various considerations at issue demonstrates that Morgan Stanley will suffer no hardship if it were required to participate in discovery with respect to Mr. Kwak's Section 2802 claims. Furthermore, there is no trial date set in this Section 2802 action and the pretrial conference is not scheduled to be held until June 1, 2009. It is very likely that the retrial in the SEC action, which is currently scheduled to commence some time in January 2009, will be completed prior to commencement of the trial in this action. Thus, Morgan Stanley's request for a stay is premature and should therefore be denied.

Should the facts and/or circumstances later warrant, Morgan Stanley can renew its motion for a stay at that time.

**VII.**

**CONCLUSION**

Morgan Stanley's motion for stay is the latest in a long series of acts which are designed to delay the inevitable, i.e., an adjudication by this Court that Morgan Stanley is legally obligated to indemnify Mr. Kwak for all necessary expenditures and losses associated with his defense of the SEC action. In so doing, Morgan Stanley is also attempting to delay any adjudication of Mr. Kwak's claims that Morgan

13

1  Stanley's actions in denying its mandatory, statutory indemnification obligations constitutes willful,

2  oppressive and malicious conduct.

3      Morgan Stanley has not and cannot demonstrate that the imposition of a stay of this case pending

4  resolution of the SEC action furthers the interests of justice, favors the interests of judicial economy and

5  convenience, and/or that there will be little to no hardship to Mr. Kwak if a stay was imposed.  Rather,

6  all the evidence reflects the contrary.  Morgan Stanley has not and cannot meet its burden in establishing

7  good cause to stay this Section 2802 action.

8      In light of the foregoing, Mr. Kwak respectfully requests that the Court deny Morgan Stanley's

9  motion and that it allow this action to proceed.

10

11  Dated:  August 25, 2008                    ENGLISH & GLOVEN
                                              A Professional Corporation
12

13                                            By:/s/ Jeffrey E. Flynn
                                                 Donald A. English
14                                               Jeffrey E. Flynn
                                              Attorneys for Plaintiff
15                                            Richard A. Kwak

16

17

18

19

20

21

22

23

24

25

26

27

28

14

## CERTIFICATE OF SERVICE

I, Jeffrey E. Flynn, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and papers copies will be sent to those indicated as non-registered participants on August 25, 2008.

Dated: August 25, 2008                    /s/ Jeffrey E. Flynn
                                          Jeffrey E. Flynn