```
Donald A. English, Esq.      (State Bar No. 115569)
Jeffrey E. Flynn, Esq.       (State Bar No. 167927)
ENGLISH & GLOVEN
A Professional Corporation
550 West "C" Street, Suite 1800
San Diego, California 92101
Telephone: (619) 338-6610
Facsimile:  (619) 338-6657

Attorneys for Plaintiff
Richard A. Kwak
```

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. KWAK,<br><br>    Plaintiff,<br><br>v.<br><br>MORGAN STANLEY & CO.,<br>INCORPORATED; and DOES 1 through 20,<br>inclusive,<br><br>    Defendants. | Case No. 08-CV-689 BEN LSP<br><br>**DECLARATION OF RICHARD A. KWAK KWAK IN SUPPORT OF OPPOSITION TO DEFENDANT'S MORGAN STANLEY & CO., INCORPORATED'S MOTION TO STAY THE PRESENT ACTION**<br><br>Date: September 8, 2008<br>Time: 10:30 a.m.<br>Dept.: Courtroom 3<br>Judge: Honorable Roger T. Benitez |

I, Richard A. Kwak, declare:

1. I am the plaintiff in the above-entitled action.

2. This declaration is submitted in support of my opposition to defendant Morgan Stanley & Co., Incorporated's ("Morgan Stanley") motion to stay the present action pending resolution of an SEC action in which I am one of several named defendants. I have personal knowledge of the following matters and, if called upon to do so, could and would competently testify thereto.

**Background in Securities Industry and Employment With Morgan Stanley**

3. I began working in the securities industry in 1966. Prior to joining Morgan Stanley, I was employed by Francis I. DuPont as a registered representative. I continued in that employment through 1974 when I began employment with Dean Witter as a registered representative. I continued with Dean Witter through 1990 when I transferred to Paine Webber as a registered representative. I worked for Paine Webber through March 1998 when I began my employment as a registered representative and Vice

1  President/Financial Advisor with Morgan Stanley Dean Witter Reynolds, Inc. Morgan Stanley Dean Witter Reynolds, Inc. later became Morgan Stanley.

4.  I continued in my employment with Morgan Stanley through August 2004.

### The SEC Investigation and the Subject Trades

5.  Beginning in 1985, I learned of and began to follow Competitive Technologies, Inc. ("CTT"), a technology stock that I thereafter studied, monitored, purchased shares in, solicited, and brokered trades for and on behalf of Morgan Stanley's clients. Many of these trades were unsolicited. I have closely monitored CTT for the last 23 years.

6.  In or about the 1998 through 2001 time frame, I brokered a number of trades of CTT stock on behalf of Morgan Stanley's clients, as I had done before and since then.

7.  At all times, I believed that all of my trading of CTT stock was in compliance with all applicable laws, industry regulations, guidelines, and Morgan Stanley's own internal policies and procedures. At no time did I ever believe that I had engaged in any unlawful activity.

8.  In or about 2002, I became aware that the Securities and Exchange Commission ("SEC") had commenced a formal investigation concerning the alleged manipulation of CTT stock in or about the 1998 through 2001 time frame by several individuals and brokers, including me ("SEC investigation").

9.  All of the trading activity in which I was involved which was at issue in the SEC investigation occurred while I was employed with Morgan Stanley. More specifically, each of the referenced trades were made by me in my capacity as registered representative and Vice President/Financial Advisor for Morgan Stanley, each of the trades was made from Morgan Stanley's offices during business hours, each of the trades was subject to Morgan Stanley's review, supervision and approval, and each of the trades was made in direct consequence of the discharge of my duties as a registered representative and Vice President/Financial Advisor for Morgan Stanley. Each of the trades, therefore, was broadly incidental to Morgan Stanley's employment enterprise.

10. In addition to its review, supervision, and approval of each of the referenced trades, Morgan Stanley received commissions on each of the trades. In doing so, Morgan Stanley ratified all of my conduct relating to the trades. I am informed and thereupon believe that Morgan Stanley has retained all of the commissions it received on the trades.

11. The SEC investigation continued over the course of the next two years. During this period, Morgan Stanley provided me with both in-house and independent counsel with respect to my defense. More particularly, during the course of the SEC investigation, Morgan Stanley took the position that I had engaged in no unauthorized or illegal conduct with respect to the referenced trades and/or any activity relating thereto. Indeed, when filing formal responses to the SEC's allegations, Morgan Stanley submitted briefing which stated that I had not engaged in any illicit trading, that the trades at issue caused no manipulative effect, that there were no matched orders, and that I never maintained a manipulative purpose. At no time during the course of the SEC investigation did Morgan Stanley ever take the position that the referenced trades were not performed as a consequence of the direct discharge of my duties as a registered representative or Vice President/Financial Advisor for Morgan Stanley or that I was acting outside the course and scope of my employment with Morgan Stanley.

12. In or about April 2004, Morgan Stanley learned that the SEC intended to proceed with a formal civil action against the targets of the SEC investigation, including me. Shortly thereafter, the independent counsel retained by Morgan Stanley on my behalf informed both Morgan Stanley's in-house counsel and me that the legal expenses associated with my defense in a formal proceeding could run from $350,000 to $500,000 or more through trial.

13. Shortly thereafter, on or about June 1, 2004, Morgan Stanley withdrew the legal defense it had provided me, including the services of independent counsel, stating that it had no duty to defend me.

14. In August 2004, I engaged English & Gloven, A Professional Corporation ("English & Gloven") to request that Morgan Stanley provide me with a legal defense to the SEC's civil action and that it provide me with indemnity for all expenditures or losses associated therewith. English & Gloven, on my behalf, sent Morgan Stanley several letters requesting that Morgan Stanley re-institute my defense and/or agree to indemnify me in the SEC action. Morgan Stanley refused to provide me with a defense to the SEC action and instructed me to present an indemnification demand at a later date.

### The SEC Action

15. On August 11, 2004, the SEC filed a civil complaint in the United States District Court, District of Connecticut, Securities and Exchange Commission v. Competitive Technologies, Inc., et al.,

1  USDC, District of Connecticut Case No. 3:04cv1331 JCH ("SEC action"). I was named as one of several defendants therein. The complaint alleges the following counts against me: 1) a violation of Section 9(a) of the Securities Exchange Act of 1934 ("Exchange Act"); 2) a violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"); 3) a violation of Section 10(b) of the Exchange Act, and Rule 10b-5; and 4) aiding and abetting violations of Sections 9(a) and 10(b) of the Exchange Act and Rule 10b-5.

16.   On or about September 2004, I engaged Gersten Clifford & Rome LLP, a Hartford, Connecticut law firm, to defend my interests in the SEC action. Shortly thereafter, the Gersten Clifford firm filed an answer on my behalf which generally and specifically denied each of the SEC's allegations against me and asserted various affirmative defenses on my behalf.

17.   The SEC's prosecution of its civil action proceeded over the course of the next three years. During the course of the litigation, the SEC reached settlements with CTT and several other individual defendants, with the exception of defendants Sheldon Strauss, Stephen Wilson, and me.

18.   Trial in the SEC action went forward in November 2007. On November 29, 2007, the jury returned its verdict finding defendant Strauss liable on all counts. The jury, however, found that Mr. Wilson and I did not violate the Section 17(a) claims alleged in the case. The jury was unable to reach any findings on the remaining three counts against either Mr. Wilson or me.

19.   The SEC has since stated its intent to retry the remaining three counts against Mr. Wilson and me.

### Necessary Expenditures and Losses

20.   As of December 31, 2007, I have incurred the following necessary expenditures and losses as a result of defending my interests in the SEC action:

- approximately $500,000 in attorney's fees and costs arising from Gersten, Clifford & Rome, LLP's representation of my interests in the SEC action; and
- approximately $16,500 in out-of-pocket expenditures incurred by me in association with my defense of the SEC's claims.

21. As of that date, I have also incurred approximately $65,000 in attorney's fees and costs arising from English & Gloven's representation of me in my attempts to secure indemnity from Morgan Stanley to obtain the statutory benefits of California Labor Code section 2802.

22. Since that time, I have incurred additional fees and costs in the defense of the SEC claims as well as in my attempts to secure indemnification.

### The Labor Code Section 2802 Indemnity Action

23. On December 12, 2007, my counsel sent Morgan Stanley a letter requesting indemnification for the over $500,000 in fees and costs I incurred in defending the SEC's claims through the first trial in the SEC action. Morgan Stanley ignored my request for indemnity. On February 1, 2008, my counsel sent another letter requesting reimbursement. Morgan Stanley ignored this request for indemnity as well.

24. I initiated the instant action on March 13, 2008 so as to adjudicate my rights under California Labor Code section 2802 and related case law. My complaint sets forth causes of action for 1) a violation of California Labor Code Section 2802; 2) a claim of negligence per se; and 3) a request for declaratory relief.

25. My Section 2802 indemnity action seeks reimbursement of all necessary expenditures and losses I have and/or will incur in the defense of the SEC claims, all attorney's fees and costs expended in the effort to obtain reimbursement, and exemplary damages based on Morgan Stanley's willful, malicious, and oppressive conduct which is associated with its refusal to honor its mandatory statutory indemnification obligations.

### Retrial of the SEC Action

26. Following the conclusion of the first trial in the SEC action, the SEC stated its intent to retry Mr. Wilson and me on the remaining three counts. Trial of the remaining three counts was initially scheduled to commence on September 29, 2008.

27. In or about April 10, 2008, the Gersten Clifford firm filed motions to withdraw as my counsel given my inability to pay for past and future defense fees and costs. On August 1, 2008, Gersten Clifford's motion to withdraw as my counsel was granted.

28. As a result, I had to request a continuance of the retrial in the SEC action so that I could attempt to secure new counsel. On August 21, 2008, the court in the SEC action granted my request for a three month continuance of the trial. The retrial of the SEC action is now scheduled to commence sometime in January 2009.

29. I intend to vigorously defend my interests at the retrial. Indemnification of the necessary expenditures and losses incurred to date is necessary for me to fund my defense in the retrial.

### Opposition to Morgan Stanley's Motion for Stay

30. I firmly believe that I should have the right to have my Labor Code section 2802 action against Morgan Stanley proceed without delay. I (and my family) have and continue to suffer extreme hardship, both financial and personal, given Morgan Stanley's refusal to provide me with a defense and its refusal to timely reimburse me for all necessary expenditures and losses which I have incurred in defending my interests in the SEC action.

31. Any stay of this Section 2802 action will further subject and expose me to significant financial and personal hardship. In light of all the facts and circumstances set forth above, I do not believe that Morgan Stanley's request for a stay is warranted.

32. I would like to proceed with discovery, have appropriate legal motions filed, and proceed to trial as soon as possible.

33. In light of the foregoing, I ask that the court deny Morgan Stanley's request for an order staying this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 25 day of August, 2008 at Escondido, California.

Richard A. Kwak

## CERTIFICATE OF SERVICE

I, Jeffrey E. Flynn, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and papers copies will be sent to those indicated as non-registered participants on August 25, 2008.

Dated: August 25, 2008            /s/ Jeffrey E. Flynn
                                  Jeffrey E. Flynn