TRISH M. HIGGINS (State Bar No. 119215)
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497
Telephone: 916-447-9200
Facsimile: 916-329-4900

AMY ROSS (State Bar No. 215692)
ERIN M. CONNELL (State Bar No. 223355)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone: 415-773-5700
Facsimile: 415-773-5759

Attorneys for Defendant
Morgan Stanley & Co. Incorporated

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. KWAK,<br><br>        Plaintiff,<br><br>v.<br><br>MORGAN STANLEY & CO. INCORPORATED; and DOES 1-20, inclusive,<br><br>        Defendants. | Civil No. 08-0689-BEN (LSP)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION OF RELATED SEC ACTION**<br><br>Date: September 8, 2008<br>Time: 10:30 a.m.<br>Dept: Courtroom 3<br>Judge: The Hon. Roger Benitez |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. MORGAN STANLEY HAS MET ITS BURDEN OF DEMONSTRATING THAT THE BALANCE OF RELEVANT FACTORS WEIGHS IN FAVOR OF GRANTING A STAY .......................................................................................... 2

    A. Liability Against Morgan Stanley Is Neither Certain Nor A Relevant Consideration In Ruling Upon A Motion To Stay ................................... 2

        1. Likelihood Of Success On The Merits Is Not A Relevant Factor In Ruling On A Motion To Stay ............................................ 2

        2. There Are No "Undisputed Facts" In This Case, And Kwak's Declaration Does Not Conclusively Establish Liability .............. 2

    B. Because The Actions Are Not "Separate And Distinct," Staying The Present Action Promotes Judicial Economy And Efficiency And Avoids Conflicting Rulings ..................................................................... 4

    C. Kwak Fails To Show That Morgan Stanley Should Be Estopped From Seeking A Stay ............................................................................... 6

    D. Unnecessary Litigation Costs Constitute A Hardship On Morgan Stanley ........... 8

    E. The Waste Of Judicial Resources And Inefficiencies That Would Result From Denying The Present Motion Outweigh Any Potential Prejudice To Kwak ........... 8

    F. Granting The Present Motion Will Not Interfere With Kwak's "Absolute Right" To Pursue His Indemnification Claim ..................................... 9

    G. Kwak Fails To Demonstrate That The Outcome Of The SEC Action Will Not Bear Upon Whether Or Not Morgan Stanley Is Entitled To A Set Off ........... 10

III. BECAUSE OF IMPENDING DISCOVERY AND DISCLOSURE DEADLINES, MORGAN STANLEY'S MOTION TO STAY THIS ACTION IS TIMELY ................. 10

IV. CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

Page

## CASES

*Alma W. v. Oakland Unified School Dist.*,
123 Cal. App. 3d 133 (1981) .................................................................... 5

*Bechtel Corp. v. Local 215, Laborer's Int'l Union of North America*,
544 F.2d 1207 (3d Cir. 1976) .................................................................. 4

*Devereaux v. Latham & Watkins*,
32 Cal. App. 4th 1571 (1995) .................................................................. 5

*Douglas v. Los Angeles Herald-Examiner*,
50 Cal. App. 3d 449 (1975) .................................................................. 8, 9

*Farmers Ins. Group v. County of Santa Clara*,
11 Cal. 4th 992 (1995) ............................................................................ 5

*Grissom v. Vons Cos., Inc.*,
1 Cal. App. 4th 52 (1991) ..................................................................... 7, 8

*Jacobus v. Krambo Corp.*,
78 Cal. App. 4th 1096 (2000) .................................................................. 8

*Los Angeles Policy Protective League v. City of Los Angeles*
27 Cal. App. 4th 168 (1994) .................................................................... 5

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) .............................................................. 4, 6

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ............................................................................. 6, 7

*Nielsen v. Merck & Co.*,
Case No. C07-00076
MJJ, 2007 U.S. Dist. LEXIS 21250 (N.D. Cal. Mar. 15, 2007) ............. 2

*O'Hara v. Teamsters Union Local # 856*,
151 F.3d 1152 (9th Cir. 1998) ................................................................. 5

*Plancarte v. Guardsmark*,
118 Cal. App. 4th 640 (2004) .................................................................. 8

*Rivers v. The Walt Disney Company*,
980 F. Supp. 1358 (C.D. Cal. 1997) ....................................................... 2

*Sun Pac. Mktg. Coop., Inc. v. Dimare Fresh, Inc.*,
Case No. CIV-F-06-1404 ........................................................................ 9

*Zuniga v. United Can Co.*
812 F.2d 443, 450 (9th Cir. 1987) ........................................................... 6

# TABLE OF AUTHORITIES
(continued)

Page

**STATUTES**

Cal. Lab. Code § 2802 .................................................................................................. 1, 4, 7, 8, 9

## I.  INTRODUCTION

Kwak's Opposition falls woefully short of demonstrating that the balance of relevant factors weighs in favor of denying Morgan Stanley's request for a stay of the present action. Indeed, rather than address the key legal points laid out in Morgan Stanley's moving papers, Kwak instead spends the majority of his Opposition attempting to argue the merits of his indemnification claim under Labor Code Section 2802. Not only does Kwak's terse treatment of the analysis required to determine liability under Section 2802 demonstrate his unfamiliarity with this area of the law, but more importantly, likelihood of success on the merits is not a relevant consideration when ruling on a motion to stay. Similarly, Kwak's puzzling reference to "undisputed facts," and insistence that they demonstrate he will be entitled to indemnification, even if a jury in the underlying SEC action finds that he engaged in the fraudulent conduct alleged, makes no sense. As an initial matter, there obviously are no undisputed facts in this case (indeed, there have been no findings of fact at all), and case law makes abundantly clear that if Kwak in fact did engage in the fraudulent conduct alleged by the SEC, he will <u>not</u> be entitled to indemnification from Morgan Stanley.

More importantly, Kwak's Opposition fails to counter Morgan Stanley's main point: given that the issues in, and outcome of, the underlying SEC action undoubtedly will bear upon the critical issues of (1) whether Kwak acted within the course and scope of employment, (2) whether the SEC action is unfounded, and (3) whether Morgan Stanley is entitled to a set-off due to Kwak's culpable negligence, staying the present action until resolution of the SEC action will prevent wasted judicial resources and hardship on <u>both parties</u> in the form of potentially unnecessary litigation costs, will reduce the risk of conflicting rulings, and could make the present case amenable to swift dispositive motion or other resolution. Finally, given that Section 2802 plainly does not require Morgan Stanley to defend Kwak in the SEC action, Morgan Stanley's compliance with the statute can hardly estop Morgan Stanley from seeking the present stay. Morgan Stanley respectfully requests that the Court grant its motion in its entirety.

/ / /

/ / /

II. **MORGAN STANLEY HAS MET ITS BURDEN OF DEMONSTRATING THAT THE BALANCE OF RELEVANT FACTORS WEIGHS IN FAVOR OF GRANTING A STAY**

A. **Liability Against Morgan Stanley Is Neither Certain Nor A Relevant Consideration In Ruling Upon A Motion To Stay**

Although Kwak recognizes that the appropriate standard when ruling on a motion to stay is to balance hardship on each of the parties and the considerations of judicial economy and efficiency, he nevertheless argues that the Court should deny the present motion because "Morgan Stanley's liability is certain." *See* Opposition at 2:5; 5:20-27. Kwak further claims that the "undisputed facts" in this case establish "the elements necessary to perfect [a Section 2802] claim." *See* Opposition at 5:8-9. Kwak's arguments fail both legally and factually.

1. **Likelihood Of Success On The Merits Is Not A Relevant Factor In Ruling On A Motion To Stay**

Most importantly, Kwak's argument that Morgan Stanley's liability is certain fails because likelihood of success on the merits is not one of the relevant factors when ruling on a motion to stay. *See, e.g., Nielsen v. Merck & Co.*, Case No. C07-00076 MJJ, 2007 U.S. Dist. LEXIS 21250, at *4 (N.D. Cal. Mar. 15, 2007) (citing *Rivers v. The Walt Disney Company*, 980 F.Supp. 1358, 1360 (C.D. Cal. 1997) ("[w]hen ruling on a motion to stay, a district court should consider several factors: (1) potential prejudice to the non-moving party if the action is stayed; (2) hardship and inequity to the moving party if the action is not stayed; (3) the judicial resources that would be saved by avoiding duplicative litigation; and (4) the potential for conflicting rulings"). As explained in detail in Morgan Stanley's Opening Brief, the balance of the <u>appropriate</u> factors weighs in favor of staying the present action. Accordingly, the Court should disregard Kwak's arguments about the merits of his indemnification claim all together.

2. **There Are No "Undisputed Facts" In This Case, And Kwak's Declaration Does Not Conclusively Establish Liability**

Even if Kwak's arguments regarding the merits of his claim were relevant, they nevertheless fail to demonstrate that Morgan Stanley's liability in this case is "certain." Indeed, Kwak insists that he acted within the course and scope of employment because the "undisputed facts" establish (1) that Morgan Stanley "reviewed, supervised, and approved each of the trades;"

(2) that "Morgan Stanley took and has retained commissions on each of the trades;" and (3) that "Morgan Stanley previously provided Mr. Kwak with a defense during the course of the SEC's investigation." *See* Opposition at 4:21-5:3. Notwithstanding Kwak's misguided argument, <u>there have been no findings of fact in this case</u>. When the appropriate time comes to litigate the merits of the present action, Morgan Stanley obviously will introduce its own evidence, which will create factual disputes. Thus, Kwak's characterization of his declaration testimony as "undisputed" is both premature and misleading.

Further, these "undisputed facts" do not conclusively demonstrate that Kwak is entitled to indemnification. For example, a plain reading of the SEC Complaint illustrates that the alleged unlawful conduct consists not of Kwak's trades individually, but instead consists of Kwak's alleged involvement in a fraudulent scheme, <u>in connection with others</u>, to <u>manipulate</u> the price of CTT stock by unlawfully coordinating the timing of trades. *See* Higgins Decl., Ex. A (SEC Complaint at ¶¶ 1-4, 39). Accordingly, even if Morgan Stanley did approve Kwak's individual trades (and Morgan Stanley does not concede that it did), such "approval" obviously would not mean that Morgan Stanley knew that Kwak allegedly was timing his trades in conjunction with others as part of a broader scheme to perpetrate fraud on the market. *See* Higgins Decl., Ex. A (SEC Complaint at ¶¶ 1-4, 39). Thus, Morgan Stanley's alleged "approval" of Kwak's individual trades is a red herring.

Similarly, even if Morgan Stanley did receive commissions on Kwak's trades of CTT stock, this issue has nothing to do with Kwak's right to indemnification. Rather, the relevant point is that (if the SEC allegations are proven true), Kwak's incentive in engaging in the alleged fraudulent conduct was not to benefit Morgan Stanley or its customers, but instead was to further his own financial interest. *See* Higgins Decl., Ex. A (SEC Complaint, ¶ 24). Indeed, according to the SEC, Kwak and his wife owned 53,000 shares in CTT, more than 75 percent of Kwak's customers at Morgan Stanley traded in CTT stock, and from July 1998 to June 2001, Kwak generated nearly $47,000 in commissions for himself personally due to his trades of CTT stock. *See* Higgins Decl., Ex. A (SEC Complaint, ¶ 24). Further, as explained above, the problem with Kwak's alleged conduct was not necessarily the trades themselves, but rather the manipulative

timing and coordination of the trades. *See* Higgins Decl., Ex. A (SEC Complaint, ¶¶ 1-4, 39). Morgan Stanley obviously did not benefit from the <u>timing</u> of Kwak's trades. Accordingly, the issue of whether or not Morgan Stanley "took and has retained commissions on each of the trades" is irrelevant.

Finally, Morgan Stanley's alleged "defense" of Kwak in the SEC investigation has no bearing upon whether or not he is entitled to indemnification in the present action. Rather, the relevant inquiry is whether or not Kwak acted within the course and scope of his employment, and whether or not the SEC action is unfounded. *See* Opening Brief at 6:26-8:6.

In short, Kwak's declaration in opposition to Morgan Stanley's motion to stay does not conclusively determine that Morgan Stanley's liability in this case is "certain," and has no bearing upon whether or not the Court should grant the present motion.

**B. Because The Actions Are Not "Separate And Distinct," Staying The Present Action Promotes Judicial Economy And Efficiency And Avoids Conflicting Rulings**

Kwak argues that because "[c]ourse and scope is not at issue in the SEC action," and because "[t]here are no securities claims at issue in [the present] action," there is nominal crossover between the two cases and they are "separate and distinct." *See* Opposition at 6:26-7:2;8:7-10. Kwak grossly misconstrues both the standards governing motions to stay, as well as the underlying tenets of employee indemnification law under Section 2802.

Case law is clear that when staying an action pending outcome in a related action, the issues in the related action need not be identical; rather, it is enough that the issues in the related action will bear upon issues in the action to be stayed, thereby increasing judicial economy and efficiency. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (where the trial court finds it "efficient for its own docket and the fairest course for the parties," it may order a stay even where "the issues in such proceedings are [not] necessarily controlling of the action before the court"); *Bechtel Corp. v. Local 215, Laborer's Int'l Union of North America*, 544 F.2d 1207,1215 (3d Cir. 1976) ("[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially

affect it or be dispositive of the issues").[1]

Here, notwithstanding Kwak's oversimplification of indemnification law, he simply cannot be heard to argue that if a jury in the SEC action finds that Kwak engaged in a fraudulent scheme to manipulate the stock market for his own personal benefit, such conduct nevertheless is within the course and scope of his employment as a matter of law. *See, e.g., Farmers Ins. Group v. County of Santa Clara*, 11 Cal. 4th 992, 1003 (1995) ("[a]n employee is not acting within the course and scope where the employee "*substantially* deviates from the employment duties for personal purposes") (emphasis in original); *Alma W. v. Oakland Unified School Dist.*, 123 Cal. App. 3d 133, 140 (1981) ("[i]f an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior"). To the contrary, such a finding would have <u>a direct bearing upon</u> whether Kwak acted within the course and scope of his employment, even if the two issues are not identical in every way.

Further, Kwak fails to demonstrate that a showing that the SEC action is unfounded is not a required element of his indemnification claim. Although Kwak correctly identifies that there is uncertainty among the California courts of appeal on whether or not an employee seeking indemnification must demonstrate that the underlying action is unfounded, he conveniently fails to acknowledge that <u>the Ninth Circuit</u> does require this additional showing. *See O'Hara v. Teamsters Union Local # 856,* 151 F.3d 1152, 1158 (9th Cir. 1998) ("in order to be acting in 'discharge of (his) duties' the employee must have acted 'within the course and scope of. . .employment' *and* the action against the employee must be 'unfounded'") (citing *Devereaux v. Latham & Watkins,* 32 Cal. App. 4th 1571 (1995) and quoting *Los Angeles Policy Protective League v. City of Los Angeles* 27 Cal. App. 4th 168 (1994) (emphasis in original). Accordingly,

---

[1] Kwak's three-page recitation of the factual distinctions between his case and the cases cited in Morgan Stanley's Opening Brief fails to demonstrate that Morgan Stanley is not entitled to a stay in the present action. *See* Opposition at 8:23-12:3. First and foremost, Morgan Stanley does not cite the cases listed by Kwak for the proposition that are factually similar to the facts here. Rather, Morgan Stanley cites the cases because they articulate the appropriate factors that should be weighed when ruling on a motion to stay. *See* Opening Brief at 5:16-6:19. Further, notwithstanding the factual distinctions identified by Kwak, the cases grant stays to address the same concerns raised here: obviating potentially unnecessary litigation costs, avoiding conflicting judgments, awaiting adjudication of a critical issue in a related case, and increasing judicial economy and efficiency. *See* Opposition at 8:23-12:3.

because in <u>this case</u>, Kwak will need to show that the SEC action is unfounded, it makes little sense to proceed with the present action until completion of the SEC action. *See, e.g., Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) ("[d]istrict courts are, of course, bound by the law of their own circuit. . . "no matter how egregiously in error they may feel their own circuit to be").[2]

In short, because the issues in – and ultimate outcome of – the SEC action directly bear upon issues in the present action, the interests of judicial economy and efficiency, and the avoidance of conflicting rulings, are best served by staying the present action until resolution of the SEC action. *See, e.g., Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d at 1465.

### C. Kwak Fails To Show That Morgan Stanley Should Be Estopped From Seeking A Stay

Kwak argues (without citing any case law) that because Morgan Stanley and its clients allegedly benefited from "the trades at issue," because Morgan Stanley allegedly "reviewed, supervised and approved all of the trades," and because Morgan Stanley allegedly defended Kwak during the SEC investigation but not during the SEC action, Morgan Stanley should be estopped from seeking a stay in the present action. Once again, Kwak's argument fails.

Judicial estoppel is an equitable doctrine that courts may invoke to prevent a party from asserting claims inconsistent with claims that party has previously asserted with success: "[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *New Hampshire v. Maine*, 532 US 742, 749 (2001) (internal quotes omitted). The doctrine is intended to protect the integrity of the judicial process and "to prevent parties from playing fast and loose with the courts." *Id.* at 749–750 (internal quotes omitted). Three factors typically inform a court's decision on whether to apply the doctrine in a particular case, including (1) the positions taken by the party must be <u>clearly inconsistent</u>, (2) the court in the earlier lawsuit must have <u>accepted</u> the party's position, so that judicial acceptance of an inconsistent position in the present proceeding would create the perception that either the first or the second court was

---

[2] Indeed, with respect to the concern about conflicting rulings, perhaps no two rulings could conflict more than a jury verdict against Kwak in the SEC action, and a finding in the present action that the SEC action was unfounded.

misled, and (3) allowing the inconsistent position in the present proceeding would give the party an <u>unfair advantage</u> or impose an <u>unfair detriment</u> on the opposing party. *Id.* at 750-751.

Here, Kwak fails to demonstrate <u>any</u> of these three elements. As an initial matter, Morgan Stanley has never been a party to the SEC action. Thus, Kwak's insinuation that Morgan Stanley took any positions in that case is misleading. To the extent that Kwak is referring to alleged "positions" Morgan Stanley took in the SEC investigation prior to the civil case, Kwak's estoppel theory nevertheless fails because <u>not one</u> of the "positions" Kwak claims Morgan Stanley has taken is <u>clearly inconsistent</u> with the relief sought in the present motion: a brief and appropriate stay pending resolution of the SEC action. Similarly, Kwak fails to make any showing that the alleged positions previously taken by Morgan Stanley were accepted by a court or the SEC. Further, Kwak fails to show how Morgan Stanley's present position gives Morgan Stanley an <u>unfair</u> advantage, or puts Kwak at an <u>unfair</u> detriment.[3]

Finally, Kwak's argument that Morgan Stanley's failure to defend him in the SEC action should estop Morgan Stanley from seeking a stay now merely underscores Kwak's misunderstanding of Section 2802. Indeed, even if the doctrine of judicial estoppel could somehow be contorted to apply in this situation, the law is clear that an employer's duty under Section 2802 includes necessary defense <u>costs</u>, but does not require that the employer actually provide the employee with defense counsel. *See, e.g., Grissom v. Vons Cos., Inc.*, 1 Cal. App. 4th 52, 55 (1991). Thus, Morgan Stanley's actions are entirely consistent with its obligations under Section 2802, and <u>do not</u> constitute a basis on which to estop Morgan Stanley from seeking an

---

[3] Indeed, Kwak (once again) appears to be arguing the merits of this case, in that he appears to be arguing that Morgan Stanley should be judicially estopped from taking the position that Kwak acted outside the course and scope of his employment. Even if it were appropriate for Kwak to be litigating the merits, Kwak's arguments nevertheless are baseless. First, as explained in Section II, A, 2, *supra*, even if Morgan Stanley did receive commissions on Kwak's trades of CTT stock, this issue has nothing to do with Kwak's right to indemnification. Further, as to Kwak's argument regarding Morgan Stanley's retention of the commissions it received from Kwak's CTT trades, Kwak's alleged victims were the general investing public, who allegedly were misled into thinking that the value of CTT stock, as well as investor interest in CTT, was artificially high. *See* Higgins Decl., Ex. A (SEC Complaint, ¶ 4). Morgan Stanley should not be estopped from defending Kwak's 2802 claim because it failed to return the commissions it received to the public at large. Further, as explained in Section II, A, 2, *supra*, even if Morgan Stanley did review, supervise and approve Kwak's individual trades, Kwak has no evidence that Morgan Stanley approved the alleged fraudulent scheme in which Kwak and others allegedly coordinated and timed their trades to artificially inflate the price of CTT stock. *See* Higgins Decl., Ex. A (SEC Complaint, ¶¶ 1-4). Accordingly, Kwak's estoppel argument fails on this ground as well.

otherwise appropriate stay of Kwak's Section 2802 claim pending resolution of the underlying SEC action.[4]

### D. Unnecessary Litigation Costs Constitute A Hardship On Morgan Stanley

Rather than address the substance of Morgan Stanley's arguments regarding the hardship to <u>both parties</u> (and the Court) that could be avoided by staying the present action, Kwak instead argues that the Court should disregard this consideration because Morgan Stanley did not submit a declaration presenting evidence of this hardship. Kwak's argument is frivolous. Indeed, neither the Court nor the parties need a declaration to demonstrate that full-blown discovery, expert practice, summary judgment, and trial of the present action is going to be time-consuming and expensive. *See* Opening Brief at 9:16-11:16. Because staying the present action until resolution of the SEC action could obviate much of that expense, the Court should grant Morgan Stanley's motion to stay.

### E. The Waste Of Judicial Resources And Inefficiencies That Would Result From Denying The Present Motion Outweigh Any Potential Prejudice To Kwak

Kwak admits in his Opposition that the SEC action is scheduled to go to trial in January 2009. *See* Opposition at 13:17-18. Accordingly, a stay in the present action would only last a few short months, illustrating that the potential prejudice to Kwak by granting the present motion is relatively small. Indeed, Kwak's primary argument is that he <u>already</u> has been prejudiced because Morgan Stanley did not provide him with defense counsel in the SEC action, but instead

---

[4] Kwak also incorrectly states that because Morgan Stanley did not provide him with a defense up front, Morgan Stanley is "estopped" from challenging the reasonableness of his attorneys' fees and costs. See Opposition at 7:13-20. Kwak relies upon *Douglas v. Los Angeles Herald-Examiner*, 50 Cal. App. 3d 449, 465 (1975) and *Plancarte v. Guardsmark*, 118 Cal. App. 4th 640, 648 (2004), which plainly do not say anything about the employer challenging the reasonableness of defense costs. To the contrary, in *Douglas*, the parties "stipulated that the correct sum of attorney's fees and costs [in the underlying action] was $3,102.30," and "stipulated that costs incurred in the instant action (not counting appellate costs) were $5,239.20." *Id.* at 453. Accordingly, the "reasonableness" of the fees and costs was not at issue. *Id.* Similarly, in *Plancarte*, the employer provided the employee with a legal defense upfront, which the Court recognized made sense because the employer could have been found liable for the employee's alleged acts, and thus it was "in Guardsmark's interest that [the employee] have adequate and reliable representation." *Plancarte*, 118 Cal. App. 4th at 647. By contrast, California courts that have addressed this issue hold that the determination of whether legal fees and costs were "necessary" requires an analysis into reasonableness. *Grissom v. Vons Cos., Inc.*, 1 Cal. App. 4th 52, 58 (1991) (the reasonableness of any expenditure "must turn on its own facts" and is ascertained by "an inquiry into what was reasonable under the circumstances"); *Jacobus v. Krambo Corp.*, 78 Cal. App. 4th 1096, 1104 (2000) ("[w]hether the legal expenses incurred by an employee were necessary requires an inquiry into reasonableness"). Accordingly, even if Kwak is able to show that he acted in the course and scope of employment and that the SEC action is unfounded, he still will need to show that the legal fees and costs he incurred were reasonable, a determination which will be clearer once the SEC action is resolved.

is waiting (as contemplated by Section 2802) until it has been judicially determined that he acted within the course and scope of employment. *See* Cal. Lab. Code § 2802; *Douglas v. Los Angeles Herald-Examiner*, 50 Cal. App. 3d 449, 464 (1975) (an employer is not required to provide indemnification for necessary and reasonable legal fees or costs unless it has been judicially determined that the statutory conditions for recovery apply – *i.e.*, that the employee was in fact acting in the course and scope of employment). Thus, any alleged prejudice claimed by Kwak can hardly be characterized as unfair, when Morgan Stanley clearly has met its obligations to Kwak under California law.

### F. Granting The Present Motion Will Not Interfere With Kwak's "Absolute Right" To Pursue His Indemnification Claim

Kwak's argument that the Court should deny Morgan Stanley's motion because he has "an absolute right to pursue his Labor Code Section 2802 claim" fails in the first instance because staying the present action does not interfere with Kwak's "absolute right" to pursue his indemnity claim. *See* Opposition at 4:19. To the contrary, a stay would help ensure that the litigation of Kwak's indemnity claim runs smoothly, and would decrease the likelihood of inconsistent rulings between this action and the SEC action. *See, e.g., Sun Pac. Mktg. Coop., Inc. v. Dimare Fresh, Inc.*, Case No. CIV-F-06-1404 AWI, 2007 U.S. Dist. LEXIS 32437 at *14 (E.D. Cal. April 19, 2007) (recognizing that "the risk of conflicting rulings justifies a discretionary stay"). Further, to the extent that Kwak is arguing that he has an "absolute right" to pursue his indemnity claim now, he cites to no authority in support of this proposition. Nothing in Section 2802 states that employee indemnification claims cannot be stayed pending resolution of the underlying action, and nothing in the case law articulating the relevant factors for ruling on a motion to stay excepts claims brought under Section 2802.[5] Accordingly, granting the present motion in no way infringes upon Kwak's "absolute right" to pursue his claim.

---

[5] Indeed, had the legislature intended to grant employees with an "absolute right" to immediate indemnification for legal fees, the statute would have required that employers provide employees with a defense, instead of merely requiring that employers reimburse the employee for reasonable and necessary defense costs once it has been judicially determined that the employee acted within the course and scope of employment. *See* Cal. Lab. Code § 2802; *Douglas v. Los Angeles Herald-Examiner*, 50 Cal. App. 3d at 464 (an employer is not required to provide indemnification for necessary and reasonable legal fees or costs unless it has been judicially determined that the statutory conditions for recovery apply – *i.e.*, that the employee was in fact acting in the course and scope of employment).

### G. Kwak Fails To Demonstrate That The Outcome Of The SEC Action Will Not Bear Upon Whether Or Not Morgan Stanley Is Entitled To A Set Off

Kwak argues that Morgan Stanley cannot be entitled to a set off due to Kwak's culpable negligence because he acted in good faith, and with Morgan Stanley's approval. *See* Opposition at 7:25-8:2. Obviously, a jury verdict against Kwak in the SEC action would indicate Kwak did not act in good faith, and as explained in Section II, A, 2, *supra*, Morgan Stanley did not approve of the fraudulent conduct alleged. Thus, the SEC action's outcome bears upon this issue as well.

## III. BECAUSE OF IMPENDING DISCOVERY AND DISCLOSURE DEADLINES, MORGAN STANLEY'S MOTION TO STAY THIS ACTION IS TIMELY

A plain read of the discovery and other pre-trial deadlines outlined in Kwak's Opposition illustrates that Morgan Stanley's request for the present stay is timely. As explained in Morgan Stanley's Opening Brief, expert disclosures are due on November 7, 2008. *See* Opening Brief at 10:7-16; Opposition at 3:7. Similarly, expert reports are due January 23, 2008. *See* Opposition at 3:10-11. Further, the cut-off for <u>all discovery</u> in the case is February 6, 2009. *See* Opposition at 3:13-14. One primary reason Morgan Stanley requests the present stay is because the outcome of the SEC action could obviate the need for experts at all, and could also obviate the need for discovery of complicated issues; namely, whether or not Kwak engaged in a fraudulent scheme of timed trades for his own personal benefit. *See* Opening Brief at 9:17-10:16. Accordingly, it is appropriate for the Court to stay the present action <u>now</u>, before these impending expert and discovery deadlines are upon the parties prior to resolution of the SEC action, which is scheduled to commence trial in January 2009. *See* Kwak Decl., ¶ 28.[6]

## IV. CONCLUSION

Morgan Stanley respectfully requests that the Court grant this motion in its entirety.

Dated: August 29, 2008.

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____s/Trish M. Higgins_____
Trish M. Higgins
Attorneys for Defendant
Morgan Stanley & Co. Incorporated

---

[6] For these same reasons, Kwak's argument that he should be permitted to proceed with discovery "so as to move this case forward" would undermine the purpose of the requested stay all together. Accordingly, the Court should grant Morgan Stanley's request for a stay, which would govern discovery as well as all other aspects of the case.

OHS West:260500458.2 

- 10 - 

REPLY MEMO OF P&A'S IN SUPPORT OF DEFENDANT'S MOTION TO STAY

## DECLARATION OF ELECTRONIC SERVICE

I, Kate Brandt, am a citizen of the United States, more than eighteen years old and not a party to this action. My business address and place of employment is Orrick, Herrington & Sutcliffe LLP, The Orrick Building, 405 Howard Street, San Francisco, California 94105-2669.

I hereby certify that, on September 2, 2008, I have taken steps to cause this document, **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE PRESENT ACTION PENDING RESOLUTION OF RELATED SEC ACTION,** when filed through the Electronic Case Filing ("ECF") system, to be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), including the following:

Donald A English
dae@englishapc.com,arj@englishapc.com

Jeffrey Edward Flynn
jef@englishapc.com,arj@englishapc.com

The NEF shows no non-registered participants.

Executed on September 2, 2008, in the City and County of San Francisco, State of California.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct.

*Kate Brandt*
Kate Brandt